Charles E. O'Connor, Escheator of the Commonwealth of Pennsylvania. The Sperry and Hutchinson Company, Appellant.

600

Argued October 5, 1977, before President Judge BOWMAN. and Judges CRUMLISH, JR., WILKINSON, JR., ROGERS and BLATT.

*W. Charles Hogg, Jr.,* with him *Stephen W. Miller,* and *Clark, Ladner, Fortenbaugh & Young,* for appellant.

*Lawrence Barth,* Assistant Attorney General, with him *Arthur M. Cooper,* Deputy Attorney General, *Michael von Moschzisker,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, appellee.

OPINION BY JUDGE WILKINSON, JR., December 7, 1977:

This case arises from a petition in escheat filed against the appellant in the Court of Common Pleas of Philadelphia County. On July 15, 1976 the lower court issued an order denying appellant's preliminary objections to the petition and this appeal followed. We affirm.

Appellant, The Sperry & Hutchinson Company (S & H), a New Jersey Corporation authorized to do business in Pennsylvania, supplies retail merchants in Pennsylvania with what are commonly called "S & H Green Stamps" under an agreement whereby the merchants purchase pads of stamps for issue to their customers to induce sales. The customers in turn have books to be filled with these trading stamps which can then be presented for redemption by S & H for merchandise. Predictably, not all of the stamps that have been issued have been redeemed. According to the averments,[1] unredeemed trading stamps valued in excess of three million dollars were *issued by retail merchants in Pennsylvania* to their customers up to December 1, 1962. Pursuant to Section 3 of the Act of May 2, 1889, P.L. 66, *as amended,* added by Section 1 of the Act of July 29, 1953, P.L. 986, *as amended,* 27 P.S. §333,[2] on December 11, 1969 the appellee, Escheator of the Commonwealth of Pennsylvania, filed

---

[1] The averments in the petition are deemed admitted for purposes of this appeal, *Papieves v. Kelly,* 437 Pa. 373, 263 A.2d 118 (1970).

[2] This Section was repealed by Section 30(a)(2) of the Act of August 9, 1971, P.L. 296.

a petition to escheat this amount. Appellant filed preliminary objections contending, *inter alia*, that under the rule in *Texas v. New Jersey*, 379 U.S. 674 (1965) the lower court lacked jurisdiction over the subject matter of the petition in escheat. Subsequent to the filing of the preliminary objections and answer, the parties agreed to defer argument until after the Supreme Court of the United States decided *Pennsylvania v. New York*, 407 U.S. 206 (1972) involving conflicting claims of several states as to escheated property. Argument on the preliminary objections was heard on May 28, 1975. The objections were dismissed by an order of the court below on July 15, 1976. Appellant filed an appeal based on the Act of March 5, 1925 (Act), P.L. 23, *as amended*, 12 P.S. §672.

Under Section 1 of the Act, 12 P.S. §672, an appeal is allowed "[w]henever in any proceeding at law or in equity the question of jurisdiction over the defendant or of the cause of action for which suit is brought is raised in the court of first instance. . . ." The availability of the Act as a vehicle for appeal of an order that would otherwise be interlocutory and unappealable at this stage depends upon whether a true question of jurisdiction is raised. *Studio Theaters, Inc. v. Washington*, 418 Pa. 73, 209 A.2d 802 (1965). Thus, the first question for our consideration is appellee's contention that this appeal does not raise a true question of jurisdiction.

Since S & H does not challenge that it was amenable to process and duly served, the sole question is whether appellant's claims raise a question of jurisdiction over the cause of action. Jurisdiction over the cause of action, as used in the statute, relates "solely to the competency of the particular court to determine controversies of the general class to which the case then presented for its consideration belongs."

*Skelton v. Lower Merion Township,* 298 Pa. 471, 473, 148 A. 846 (1930). It has long been recognized that an action in escheat operates against the property claimed to have escheated and is essentially an in rem proceeding. *Western Union Telegraph Co. v. Pennsylvania,* 368 U.S. 71 (1961). Therefore, in order for the court to have jurisdiction over the cause of action in escheat it must have jurisdiction over the res and without such jurisdiction the court is without power to adjudicate with respect to the subject matter. *See Zerbe Township School District v. Thomas,* 353 Pa. 162, 44 A.2d 566 (1945). We believe appellant has properly raised two primary jurisdictional questions in this appeal. The first is whether the decision of the United States Supreme Court in *Texas, supra,* presumptively bars the lower court from entertaining jurisdiction with respect to these debts of S & H. The second is whether Pennsylvania is without power to escheat because the addresses of the creditor stampholders are unknown.

Appellants would urge upon this Court the view that *Texas* establishes a rule whereby only two states have the right to escheat intangible personal property and that if neither of those states can escheat under their statutes, then no other state can claim the property held by the obligor. We do not believe this is the holding of *Texas.* In *Texas,* the Supreme Court, exercising its original jurisdiction, was called upon to decide the claims of several states to certain unclaimed debts of Sun Oil Company, a New Jersey Corporation with principal offices in Pennsylvania, involving claims arising in Texas. Faced with these multiple claims, the Supreme Court established the rule that the state of the last known addresses of the creditors or other obligees of intangible property has the superior right to escheat. Anticipating there may be some rare instances where such addresses are un-

known, the Court further held that then the superior power to escheat would lie with the state of the domicile of the holder of the property. Initially the Court noted:

> The issue before us is not whether a defendant has had sufficient contact with a State to make him or his property rights subject to the jurisdiction of its courts, a jurisdiction which need not be exclusive. . . . [W]e are faced here with the very different problem of deciding which State's claim to escheat is superior. . . .

379 U.S. 678-79.

The Court concluded:

> We realize that this case could have been resolved otherwise, for the issue here is not controlled by statutory or constitutional provisions. . . . It is fundamentally a question of ease of administration and of equity.

*Id.* at 683.

It is apparent in our view that the Court meant its rule to be binding only where there were multiple claims to the same property. Moreover, we believe it equally clear that the Court did not decide whether any other state would have rights next in line[3] to those it considered because it believed either one of those states would be willing and able to escheat. Such is not the case here. S & H does not have, nor has it

------

[3] At oral argument, appellee asserted its claim was based on the position taken by the state of Texas in *Texas, supra, i.e.,* that Pennsylvania, as the state having the largest number of retail merchants offering S & H Green Stamps, has the greatest number of contacts with the intangible property, and hence has the power to escheat. Faced with deciding which state had the superior claim, the contacts test was rejected by the Supreme Court in favor of a "rule which would govern all types of intangible obligations like these and to which All States may refer with confidence." 379 U.S. at 678. As this case demonstrates the Court's optimism regarding the universality of its rule was perhaps too great.

ever had, records showing the addresses of holders of its trading stamps. Thus, if addresses are controlling, no state is able to claim that "superior" right. Moreover, New Jersey, the state of the corporate domicile, is unable to escheat by its own statute. *State of New Jersey v. Sperry & Hutchinson Co.,* 56 N.J. Super. 589, 153 A.2d 691 (1959), *aff'd per curiam,* 31 N.J. 385, 157 A.2d 505 (1960), *aff'g,* 49 N.J. Super. 165, 139 A.2d 463 (1958). Given these facts we cannot say the rule in *Texas* compels dismissal of this case. This is especially true when, as here, though the debtor does not have the addresses of the creditor, it is known that the debtor-creditor relationship arose in Pennsylvania and that is the last contact with the creditor. One would have to be out of touch with reality not to recognize that the great majority of purchasers from Pennsylvania merchants are residents of Pennsylvania at the time of the purchase.

The next jurisdictional bar claimed by appellant is that Pennsylvania does not have the power to escheat because the addresses of the creditors are unknown, an assertion based upon the fundamental in rem nature of the proceedings. Appellant asserts that the only way property can be shown to be under the control of the state for escheat is to prove that the state is the address of the last known stampholder. This is so, appellant contends, because of the ancient concept of *mobilia sequuntur personam* followed by the Supreme Court in *Texas, supra.* Although this concept is reflected in the court's *rule of priority,* it also recognized that jurisdictional power to affect property rights need not be so exclusive. In regard to the jurisdictional requirements of a state over intangibles the Court has said:

> These [escheat proceedings] are generally considered proceedings strictly in rem. But whether the proceedings should be described as being

in rem or as being quasi in rem is not of legal significance in this connection. In either case the essentials of jurisdiction over the deposits are that there be seizure of the res at the commencement of the suit; and reasonable notice and opportunity to be heard. . . .

Seizure of the deposit is effected by the personal service made upon the bank. . . . Thereby the res is subjected to the jurisdiction of the court. . . . (Citations omitted.)

*Security Savings Bank v. State of California,* 263 U.S. 282, 287-88 (1923).

Thus, we believe that when appellant was duly served with process the effect of such service was to seize the res. The fact that the claim of the state to the obligation may be defeated by the appearance of a stampholder or other claimant, does not prove that the obligation was not seized for purposes of subject matter jurisdiction. *Security Bank, supra.* It is only when two or more states having conflicting claims seek to escheat the same debts that one state will be determined to lack the power to adjudicate. *See Western Union Telegraph Co. v. Pennsylvania, supra.* For the same reason we deem appellant's claim that the Due Process Clause[4] of the United States Constitution prevents this adjudication at this stage to be without merit.

Accordingly, we will enter the following

---

[4] The due process limitation as developed by *Texas* would give the Pennsylvania court under these circumstances the right to escheat, allowing Pennsylvania to hold the property subject to the claims of stampholders or a state who is able to prove it is the address of the last known stampholder and thus prevent the obligor from being liable twice on the same obligation. The 1971 amendments to the Pennsylvania escheat statute protect the holder of such an obligation from double liability. *See* Section 15 of the Act of August 9, 1971, P.L. 293, 27 P.S. §1-15.

ORDER

Now, December 7, 1977, the order of the Court of Common Pleas of Philadelphia County, No. 2578, dated July 15, 1976, is hereby affirmed.

---

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent because I believe that the majority's opinion misapprehends both the force and the meaning of the United States Supreme Court's holding in *Texas v. New Jersey,* 379 U.S. 674 (1965).

As for the force of *Texas v. New Jersey, supra,* I note that the proceeding was one in which the Supreme Court's original jurisdiction under Article III, Section 2 of the Constitution was invoked and that the moving party sought a "declaration of rights to settle a controversy as to which State has *jurisdiction* to take title to certain abandoned intangible personal property through escheat." (Emphasis added.) 379 U.S. at 675. In response, the Supreme Court set down definitive rules for determining *jurisdiction* in cases of escheat of abandoned intangible personal property. It pointed out that four possible rules were urged by the States involved in that litigation, as follows: (1) that the State with the most significant "contacts" with the debt should be allowed exclusive jurisdiction; (2) that the State of the debtors' domicile should have exclusive jurisdiction; (3) that the State of the debtors' principal office should have exclusive jurisdiction; and (4) that the State of the creditor's last known address as shown by the debtor's books and records should have exclusive jurisdiction. The Supreme Court adopted the fourth test, holding, subject to the exceptions mentioned below, that abandoned intangible personal property was subject to escheat only by the State of the last known address of the

creditor. The "contacts" rule was wholly rejected by the Supreme Court because it "would serve only to leave in permanent turmoil a question which should be settled once and for all by a clear rule which will govern all types of intangible obligations like these and to which all States may refer with confidence." 379 U.S. at 678. Pennsylvania here relies solely on its contacts with the asserted debt by the issuance of trading stamps. In my view of *Texas v. New Jersey, supra,* Pennsylvania has no jurisdiction to escheat.

Mr. Justice BLACK writes near the end of his opinion the following:

This leaves questions as to what is to be done with property owed persons (1) as to whom there is no record of any address at all, or (2) whose last known address is in a State which does not provide for escheat of the property owed them. The Master suggested as to the first situation—where there is no last known address—that the property be subject to escheat by the State of corporate domicile, provided that another State could later escheat upon proof that the last known address of the creditor was within its borders. Although not mentioned by the Master, the same rule could apply to the second situation mentioned above, that is, where the State of the last known address does not, at the time in question, provide for escheat of the property. In such a case the State of corporate domicile could escheat the property, subject to the right of the State of the last known address to recover it if and when its law made provision for escheat of such property. In other words, in both situations the State of corporate domicile should be allowed to cut off the claims of private per-

sons only, retaining the property for itself only until some other State comes forward with proof that it has a superior right to escheat. Such a solution for these problems, likely to arise with comparative infrequency, seems to us conducive to needed certainty and we therefore adopt it.

379 U.S. at 682.

Since the instant matter presents the first hypothetical case mentioned in the opinion, New Jersey, the State of domicile, would, under the holding, have jurisdiction to escheat. In *State of New Jersey v. Sperry & Hutchinson Company*, 56 N.J. Superior Ct. 589, 153 A.2d 691 (1959), *aff'd per curiam*, 31 N.J. 385, 157 A.2d 505 (1960), the New Jersey courts held that New Jersey, the domicile State, could not escheat the cash value of unredeemed trading stamps where the stamp company was under no legal obligation to redeem stamps in less than prescribed quantities, in the absence of proof that stamps were held in redeemable quantities by individual stamp holders. The holding was not that the New Jersey escheat statute rendered New Jersey unable to escheat, as the majority here says, but that New Jersey was unable to prove that there was intangible personal property to escheat. In any case, as I read the opinion of *Texas v. New Jersey, supra,* only the State of the creditor's last known address or the State of the debtor's domicile have jurisdiction to escheat, and the State of "contacts" has none. I think that Pennsylvania has no jurisdiction to escheat under the definitive ruling of the Supreme Court and that the respondent's preliminary objections should therefore be sustained.