412 A.2d 539

**The SPERRY & HUTCHINSON COMPANY, Appellant,**

**v.**

**Charles E. O'CONNOR, Escheator of the Commonwealth of Pennsylvania.**

Supreme Court of Pennsylvania.

Argued Dec. 11, 1979.

Decided March 20, 1980.

W. Charles Hogg, Jr., Stephen W. Miller, Philadelphia, for appellant.

Lawrence Barth, Asst. Atty. Gen., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION

LARSEN, Justice.

Appellee, escheator of the Commonwealth of Pennsylvania, filed a petition in escheat in the Court of Common Pleas of Philadelphia County against appellant, the Sperry and Hutchinson Company, a New Jersey corporation authorized to do business in Pennsylvania. Appellant is in the business of supplying Pennsylvania retail merchants with trading stamps commonly known as "S & H Green Stamps." Consumers receive the S & H Green Stamps from participating retail merchants and collect the stamps in booklets which are presented to various redemption centers of appellant in exchange for cash, goods, or merchandise of the stampholder's own choosing. Not all of the stamps issued by appellant have been presented for redemption, however; and the petition in escheat avers that the value of the unredeemed

trading stamps issued prior to December 1, 1962 exceeds three million dollars. Appellee filed its petition to escheat this amount pursuant to the Act of May 2, 1889, P.L. 66, § 3, *as amended*, 27 P.S. § 333.[1]

Appellant filed preliminary objections contending, *inter alia*, that according to the rule enunciated in *Texas v. New Jersey*, 379 U.S. 674, 85 S.Ct. 626, 13 L.Ed.2d 596 (1965), the lower court lacked jurisdiction over the subject matter of the petition in escheat. These preliminary objections were dismissed by order of the lower court dated July 15, 1976, and appellant subsequently filed an appeal to the Commonwealth Court pursuant to the Act of March 5, 1925, P.L. 23, *as amended*, 12 P.S. § 672.[2] That court affirmed the order of the lower court dismissing appellant's preliminary objection to jurisdiction. *O'Connor, Escheator of the Commonwealth of Pennsylvania v. Sperry and Hutchinson Co.*, 32 Pa.Cmwlth. 599, 379 A.2d 1378 (1977). We granted appellant's petition for allowance of appeal.

As we have made clear, when an interlocutory appeal is taken pursuant to the Act of March 5, 1925,[3] "the sole question appealable is whether or not the court below had *jurisdiction* either over the person of the defendant or the subject matter of the action." *Studio Theaters, Inc. v. City of Washington*, 418 Pa. 73, 76, 209 A.2d 802, 805 (1965). Since appellant does not question the amenability of its *person* to service of process in Pennsylvania, the sole question presented by this appeal is whether the lower court has subject matter jurisdiction over the instant action in escheat. We have, on many occasions, held that subject matter jurisdiction embraces:

1. Section 333, entitled "Property of unknown owners; unclaimed property; property without rightful owner" was repealed by section 30(a)(2) of the Act of August 9, 1971, P.L. 296, effective January 1, 1972, however.

2. According to this Act, interlocutory appeal is allowed "[w]henever in any proceeding at law or in equity the question of jurisdiction over the defendant or the cause of action for which suit is brought is raised in the court of first instance . . . ."

3. *See* footnote 2.

The competency of the court to determine controversies of the general class to which the case presented for its consideration belongs, and the controlling question is whether the court had the power to enter upon the inquiry, not whether it might ultimately decide that it was unable to grant the relief sought in the particular case. . . . [T]he Act of 1925 was not concerned with matters going to the right of plaintiff to recover on his cause of action but only with his right to have his cause of action heard and determined. *Strank v. Mercy Hospital of Johnstown*, 376 Pa. 305, 309, 102 A.2d 170, 172 (1954). With this test for subject matter jurisdiction in mind, we turn to appellant's jurisdictional objections.

First, appellant contends that insofar as the addresses of stampholders are unknown, the rule set forth in *Texas v. New Jersey, supra,* constitutes a complete jurisdictional bar to *any* consideration of the petition in escheat by a Pennsylvania court. The *Texas* rule establishes priority among multiple states attempting to escheat the same res. It specifies that the state of the last known addresses of the creditors of intangible personalty has the superior right to escheat, and where such addresses are lacking, the superior power of escheat resides in the state of corporate domicile.[4] *Texas v. New Jersey, supra,* 379 U.S. at 681, 85 S.Ct. at 631, 13 L.Ed.2d at 601. Since the creditors' addresses in the instant case are unknown, appellant concludes both that Pennsylvania lacks the power to escheat according to the *Texas* rule, and lacking such power to escheat, Pennsylvania courts also necessarily lack the power to hear this action in escheat. Such a conclusion is totally without merit.

4. As the Commonwealth Court observed in its opinion, *O'Connor, Escheator of the Commonwealth of Pennsylvania v. Sperry and Hutchinson Co.,* 32 Pa.Cmwlth. at 603, 379 A.2d at 1381, New Jersey, appellant's state of corporate domicile, it unable to escheat by its own statute. *State of New Jersey v. Sperry & Hutchinson Co.,* 56 N.J.Super. 589, 153 A.2d 691 (1959), *aff'd per curiam,* 31 N.J. 385, 157 A.2d 505 (1960), *aff'g,* 49 N.J.Super. 165, 139 A.2d 463 (1958). Furthermore it follows that if addresses of stampholders are controlling in the instant case, no state would be able to demonstrate that its claim to escheat is paramount because neither appellant nor its customers keep records as to addresses of stampholders.

The question of the *power to hear* or adjudicate a controversy in escheat and the question of the *power to escheat* are separate and distinct questions.[5]  As we have stated:

> .  .  .  even though a plaintiff have no standing to bring his action, even though his complaint be demurrable, even though he fail to establish its allegations, even though the court should finally conclude that the relief he seeks should not be granted, not any or all of these circumstances would enter into, much less determine, the question whether the court had jurisdiction of the litigation.  *Studio Theaters, Inc., supra* 418 Pa. at 77, 209 A.2d at 804.

Therefore, *Texas* does not constitute a jurisdictional bar upon the lower court's statutorily authorized jurisdiction over the subject matter of a petition in escheat, and the lower court is fully competent with respect to hearing and adjudicating this controversy in escheat.[6]

■ Appellant next contends that the lower court lacks jurisdiction over the escheat action in that the lower court has not seized the res.  Appellant's contention is premised upon the ancient legal maxim that a movable res follows the person, which in this case, appellant takes to be the person of the stampholders.  It is mere sophistry, however, for appellant to suggest that appellee must symbolically seize the creditors (by knowing their addresses) in order to seize

5.  Mr. Justice Black who wrote the majority opinion for the court in *Texas* expressly distinguished between the problem of constructing a rule for establishing priority among competing states seeking to escheat the same intangible personalty and the problem of jurisdiction.  He explicitly stated that "[t]he issue before us is not whether a defendant has had sufficient contact with a State to make him or his property rights subject to the jurisdiction of its courts, a jurisdiction which need not be exclusive.  .  .  .  [W]e are faced here with the very different problem of deciding which State's claim to escheat is superior  .  .  ."  *Id.* 379 U.S. at 678–79, 85 S.Ct. at 629.

6.  The lower court's jurisdiction over the subject matter in escheat derives from legislative act, the Act of May 2, 1889, P.L. 66, § 5, *as amended*, 27 P.S. § 41(d) which provides: "jurisdiction shall be vested in the Court of Common Pleas of the county in which service of the petition of escheat may be made upon the corporation or other person by whom the property is held or owing  .  .  ."

the res. Appellant's contention, a legal fiction, is overly technical and flies in the face of the realities of the instant action which specifically involves property of unknown owners, unclaimed or abandoned property as defined by statute. Furthermore, the intangible property is not the S & H Green Stamps but the obligation they represent. In lawfully seizing the person of appellant, the obligor, the court has effectively seized the res, the obligation owing by appellant.[7]

■ Finally, appellant contends that the possibility of its multiple liability offends the Due Process Clause of the U.S. Constitution and thereby bars the lower court from exercising its jurisdiction. To speak of multiple liability at this stage of the litigation is premature; such a review would require us to address matters touching the substantive right of the appellant to have its petition for escheat ultimately granted through the lower court's exercising the power to escheat. The Act under which this appeal was taken [8] "was not intended to furnish a short cut to the determination of the issues of law or fact raised by the pleadings and that it was not concerned with matters going to plaintiff's right to recover . . . but only with his right to have his cause of action heard and determined. (emphasis omitted). *Studio Theaters, Inc., supra*, 418 Pa. at 77, 209 A.2d at 805. To the extent that the Commonwealth Court did address the question of the power to escheat the res, its statements are dicta.

Consistent with the above opinion, we affirm the order of the Commonwealth Court of December 7, 1977, which af-

7. Our position is certainly consistent with the spirit of *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). That case also cut through the legal fictions of in rem and quasi in rem jurisdiction and applied the standard for in personam jurisdiction ("fair play and substantial justice"). One of the elements comprising "fair play and substantial justice" is the sufficiency of contact of the defendant with the forum state. Certainly in the instant case the stampholders, the res, and appellant have had substantial connection with Pennsylvania since the underlying transaction arose herein and the cause of action bears a direct relation to the res.

8. *See* footnote 2.

firmed the order of the Court of Common Pleas of Philadelphia County, No. 2578, dated July 15, 1976.

ROBERTS and NIX, JJ., filed dissenting opinions.

ROBERTS, Justice, dissenting.

I agree with the majority that on this pre-trial appeal from an order of the Court of Common Pleas of Philadelphia, dismissing the preliminary objections of appellant (S & H) to the Commonwealth's "petition in escheat," the Commonwealth Court improperly exceeded its limited scope of appellate review under the Act of March 5, 1925, P.L. 23, § 1, formerly 12 P.S. § 672 (1953). Review under the Act of 1925 is limited to whether the court of common pleas has *"power* to enter upon the inquiry." *Studio Theaters, Inc. v. City of Washington,* 418 Pa. 73, 77, 209 A.2d 802, 804 (1965). Review under the Act is not to extend to the merits of the controversy. Here, as in *McFarland v. Weiland Packing Co.,* 416 Pa. 277, 206 A.2d 18 (1965), S & H has raised issues beyond the permissible scope of review under the Act and has

> "in fact [appealed] from the lower court's refusal to sustain defendant's preliminary objection in the nature of a demurrer to the complaint. This goes to the right of the plaintiff to recover and not to his right to have the cause heard and determined. An order overruling such an objection is not within the scope of appeals allowed under the Act of 1925, and is not an appealable order."

*McFarland,* 416 Pa. at 279–80, 206 A.2d at 19. Thus, the Commonwealth Court improperly expressed a view on the Commonwealth's power to obtain a judgment against S & H.

I agree, however, with the view expressed in the dissenting opinion of Mr. Justice NIX that this Court should now consider the merits. I believe also that it is not sufficient merely to label the Commonwealth Court's expression of opinion as "dictum." This lawsuit, commenced eleven years ago in 1969, still has not proceeded beyond the pleadings. Indeed, since commencement of this action the Supreme Court of the United States has decided a case relevant to

this litigation and our Legislature has revised the very laws pursuant to which the Commonwealth brings its present petition. The extraordinary delay of this important lawsuit presents an issue of manifest public concern. The merits have been sufficiently briefed and argued by the parties and the present record more than amply permits resolution of the merits. There is no reason, therefore, for this Court further to countenance any additional delay. Pursuant to its statutory discretion under 42 Pa.C.S. § 726, "notwithstanding any other provisions of law," to assume plenary jurisdiction "on its own motion" in any matter involving an issue of "immediate public importance" and enter a "final order or otherwise cause right and justice to be done," this Court now should review the merits. See *Wilson v. Blake*, 475 Pa. 627, 381 A.2d 450 (1977); see also *Hilton v. State Employees Retirement Board*, 470 Pa. 301, 368 A.2d 640 (1977); *Wieskerger Appeal*, 447 Pa. 418, 290 A.2d 108 (1972).

After careful review of the pleadings and briefs in light of relevant statutory and case law, I am convinced that the Commonwealth's present petition improperly seeks to divest funds from a corporation doing business in Pennsylvania but domiciled elsewhere in a manner not contemplated by Pennsylvania substantive law. It is for this reason that I dissent, would vacate the order of the Commonwealth Court, and would direct the court of common pleas to dismiss the Commonwealth's petition. My disagreement with the majority, however, goes well beyond its unwillingness now to dispose of the merits. I also believe the majority incorrectly analyzes one of the questions of judicial jurisdiction presented. The majority does so because, in my view, it misapprehends the relief the Commonwealth presently seeks.

## I

At the outset, there can be no doubt that the court of common pleas can exercise judicial jurisdiction under federal principles of "fair play and substantial justice" embodied in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (*in personam*), and extended in

*Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (*in rem*). Were this a case where a Pennsylvania court assumes jurisdiction to decide the Commonwealth's claim against a non-resident whose only affiliation with Pennsylvania is the assumption that the "situs" of the funds in controversy is Pennsylvania, there would be serious constitutional concern. For the Supreme Court has made it clear that a fictional situs alone cannot provide the basis for fair assumption of jurisdiction. *Shaffer v. Heitner,* supra; see *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); see also *Schreiber v. Republic Intermodal Corp.,* 473 Pa. 614, 375 A.2d 1285 (1977). Here, however, no mere fictional "situs" rule is involved. Instead, before the Pennsylvania courts is a corporation which does business in Pennsylvania and which has subjected itself to suit here by registration with the Secretary of the Commonwealth. Further, because the fund which the Commonwealth seeks to claim is the value of unredeemed trading stamps, distributed through retail merchants making sales in Pennsylvania, "the activities of the corporation [here] . . . give rise to the liabilities sued upon." *International Shoe,* 326 U.S. at 317, 66 S.Ct. at 159. In distributing these stamps through retailers, S & H enjoys "the benefits and protection of the laws of [this] state." *Id.,* 326 U.S. at 319, 66 S.Ct. at 160. There is a direct connection both between Pennsylvania and S & H as well as Pennsylvania and the fund in question. Thus, it is fundamentally fair under *International Shoe* to adjudicate in a Pennsylvania court the right of S & H to the fund.

Of equal concern, though, is whether, consistent with *Western Union Telegraph Co. v. Pennsylvania,* 368 U.S. 71, 82 S.Ct. 199, 7 L.Ed.2d 139 (1961), the court of common pleas can render a judgment protecting S & H from multiple liability. In *Western Union,* a Pennsylvania court allowed Pennsylvania absolutely to escheat intangible property of a New York corporation doing business in Pennsylvania. It did so despite New York's "aggressive, . . . actual, active and persistent" claims on the subject fund. The

Supreme Court of the United States held that, in light of the evident conflict between New York and Pennsylvania, the Pennsylvania proceedings, which could not resolve the states' conflicting claims, gave the corporation no assurance against multiple liability and thus, consistent with due process, could not stand.

The majority seeks to distinguish *Western Union* on the ground that, because a Pennsylvania court has not yet rendered judgment, the concern of multiple liability is not present. This distinction reflects the majority's misunderstanding of the Commonwealth's claim. Here, of paramount importance is that, unlike in *Western Union*, the Commonwealth does not seek to obtain its own favorable judgment without regard for the possibility that another state will render judgment against S & H affecting the same funds and subjecting S & H to multiple liability. Rather, the Commonwealth, in harmony with *Western Union's* concern for multiple liability, acknowledges and guarantees that, by way of express state law, S & H will be required to pay only once. See Disposition of Abandoned and Unclaimed Property Act, Act of August 9, 1971, P.L. 286, § 15, 27 P.S. §§ 1–15 (Supp.1979).[1] In light of the Commonwealth's assurance,

---

1. Section 15 of the Act provides:
   *"Relief from liability by payment or delivery*
   Upon the payment or delivery of the property to the secretary, the Commonwealth shall assume custody and shall be responsible for the safekeeping thereof. Any person who pays or delivers property to the secretary under this act is relieved of all liability with respect to such property so paid or delivered for any claim which then exists or which thereafter may arise or be made in respect to such property. Any holder who has paid moneys to the secretary pursuant to this act may make payment to any person appearing to such holder to be entitled thereto, and upon proof of such payment and proof that the payee was entitled thereto, the secretary shall forthwith reimburse the holder for the payment."
   Although the Commonwealth does not expressly admit it is willing to appear and defend on S & H's behalf should another state attempt to impose judgment against S & H based on the same funds, it is reasonable to presume the Commonwealth would do so. Indeed, were it to fail to appear and defend, the Commonwealth would depart from the very first principles of fairness embodied in the statute and to which the Commonwealth presently purports to adhere.

even if the Commonwealth could proceed and judgment against S & H were imposed, S & H would not be deprived due process under *Western Union.* See *State of New Jersey v. American Can Co.*, 42 N.J. 32, 41, 198 A.2d 753, 758, cert. denied, 379 U.S. 826, 85 S.Ct. 53, 13 L.Ed.2d 36 (1964). Accordingly, I agree with the majority that the court of common pleas has jurisdiction to entertain the Commonwealth's petition.

## II

This is not to say, however, that the Commonwealth can now prevail on its petition, for the question of the power of a Pennsylvania court to hear this controversy does not determine the question of the Commonwealth's power here to obtain a judgment against S & H. In evaluating this latter, distinct question of the Commonwealth's power to obtain a judgment, first it must be pointed out that the Commonwealth does not now seek to assert any absolute right to the value of the unredeemed green stamps. Rather, the Commonwealth concedes that it cannot assert an absolute right because it is unable to satisfy the rule of *Texas v. New Jersey*, 379 U.S. 674, 85 S.Ct. 626, 13 L.Ed.2d 596 (1965). Responding to the circumstances where states assert competing claims on intangible property under state escheat laws, the Supreme Court in *Texas* fashioned a federal common law rule of priority under which the state of the creditor's last known address is entitled to the property owed. *Texas* added, however, that if the creditor's address does not appear on the holder's books or is in a state that does not provide for escheat of intangibles, the state of the holder's incorporation may take custody of the funds "until some other State comes forward with proof that it has a superior right to escheat." *Texas*, 379 U.S. at 682, 85 S.Ct. at 631. Here, despite the fact that the transactions occurred in Pennsylvania, the Commonwealth admits that the anonymity of the transactions precludes it from making any showing that Pennsylvania is the state of the creditors' last known address. So too, the Commonwealth admits that

under *Texas* New Jersey, the state of S & H's domicile, has a superior right to the funds.

What the Commonwealth does assert is that by decisional law New Jersey is "unable" to make any claim on the funds, see *State of New Jersey v. Sperry & Hutchinson Co.*, 56 N.J.Super. 589, 153 A.2d 691 (1959), aff'd per curiam, 31 N.J. 358, 157 A.2d 505 (1960), and therefore the Commonwealth, as the state of most "contacts" with the transactions, may assume control. The Commonwealth, however, asserts that "[s]hould the Commonwealth be ultimately successful here, it would hold the property escheated from S & H subject to the claim of a state with a superior claim under *Texas* or other such authority." Brief for the Commonwealth at 25.[2] And, as already pointed out, the Commonwealth acknowledges that, should it prevail, it will, under mandate of state law, protect S & H from multiple liability.

In view of the Commonwealth's willingness to protect S & H from multiple liability, one might question S & H's standing to protest against any departure at all from the federal rule of *Texas*. That rule of priority was fashioned in a controversy involving the rights of competing states and not, as here, a controversy between a state and the private party holding the funds. As of yet, no other state has asserted an interest in the funds.

And certainly there can be no quarrel with the Commonwealth's contention that *Texas* does not foreclose any exceptions to its rule. There is language in the Opinion of the Court that its rule is "fundamentally a question of ease of administration and of equity." *Texas*, 379 U.S. at 683, 85 S.Ct. at 631. The Court has not yet considered the applicability of the *Texas* rule where the domiciliary state is "unable" to assert its priority. And while in *Pennsylvania v. New York*, 407 U.S. 206, 92 S.Ct. 2075, 32 L.Ed.2d 693 (1972), the Court firmly adhered to the rule of *Texas*, that decision

2. Presumably, a state with a superior claim would include any state which demonstrates that it is the state of the creditors' "last known address." Presumably, too, New Jersey, the state of domicile, would also be within the Commonwealth's contemplation of those states with a "superior claim."

may not have foreclosed the possibility that the last known address rule could be modified where the underlying transaction makes any proof of last known address impossible. See *Pennsylvania*, 407 U.S. at 214–15, 92 S.Ct. at 2080; see also id., 407 U.S. at 216–22, 92 S.Ct. at 2080–85 (Powell, J., joined by Blackmun & Rehnquist, JJ., dissenting).

Nonetheless, I am convinced that state law as embodied in applicable statutes of this jurisdiction precludes the Commonwealth from prevailing upon this claim against the intangibles of a non-resident doing business in Pennsylvania. There are two relevant Pennsylvania statutes. The first, the Act of July 29, 1953, P.L. 986, § 1, amending the Act of May 2, 1889, P.L. 66, § 3, formerly 27 P.S. § 333 (1958), was in effect at the time the Commonwealth filed its present petition in escheat. This act provides only that "any real property or personal property within or subject to the control of the Commonwealth" shall escheat to the Commonwealth where the owner's whereabouts are unknown for seven years, 27 P.S. § 333(b), where the property is unclaimed for seven years, 27 P.S. § 333(c), or where the property is without a rightful owner, 27 P.S. § 333(d).

After the parties filed their respective pleadings, but before any judicial disposition, the Legislature replaced the Act of 1953 with the Disposition of Abandoned and Unclaimed Property Act, Act of August 9, 1971, P.L. 286, § 1 et seq., 27 P.S. § 1–1 et seq. (Supp.1979), to be effective January 1, 1972, § 31.[3] Unlike the Act of 1953, the new Act quite clearly draws a distinction for purposes of determining when intangibles are subject to the Commonwealth's "custody and control" between companies domiciled in Pennsylvania and those domiciled in another jurisdiction. The new Act gives the Commonwealth far greater "custody and control" over intangibles of corporations domiciled in Pennsylvania. Not only does the Commonwealth have "custody and control" over a domiciliary's intangibles where the last

---

**3.** The parties agreed to defer argument on the pleadings until the Supreme Court decided *Pennsylvania v. New York*. That decision came in June, 1972, after replacement of the old Act. See text.

known address, as shown by the domiciliary's records, is in a jurisdiction "which [does] not provide for the escheat or custodial taking." § 3(2)(ii). The Commonwealth also has "custody and control" whether or not the domiciliary's records reflect the owner's last known address. §§ 3(2)(i) & 3(2)(iii).[4]

By contrast, the intangibles of companies domiciled outside of Pennsylvania are subject to the Commonwealth's "custody and control" only if the company's records reflect that the owner's last known address is in Pennsylvania, § 3(2)(i), or if the Commonwealth can otherwise prove that the owner's last known address is in the Commonwealth, § 3(2)(iv).

There can be no question that the Commonwealth may proceed under the old Act of 1953 even though the new Act supplants it, for under 1 Pa.C.S. § 1976 the "repeal" of "civil provisions of a statute" shall not affect "any civil action pending to enforce any right under the authority of the statute repealed." See *Cavanaugh v. Gelder*, 364 Pa. 361, 72 A.2d 85 (1950). But there also can be no question of the relevance of the new Act's specific definition of what prop-

---

4. Section 3 of the new Act provides:

"All abandoned and unclaimed property as hereafter set forth is subject to the custody and control of the Commonwealth:

(1) If it is tangible and physically located within the Commonwealth; or

(2) If it is intangible, and

(i) The last known address of the owner, as shown by the records of the holder, is within the Commonwealth; or

(ii) The last known address of the owner as shown by the records of the holder is within a jurisdiction, the laws of which do not provide for the escheat or custodial taking of such property, and the domicile of the holder is within the Commonwealth; or

(iii) No address of the owner appears on the records of the holder and the domicile of the holder is within the Commonwealth. Where the records of the holder do not show a last known address of the owner of a travelers check or money order it shall be presumed that the state in which the travelers check or money order was issued is the state of the last known address of the owner; or

(iv) No address of the owner appears on the records of the holder and the domicile of the holder is not within the Commonwealth, but it is proved that the last known address of the owner is in the Commonwealth."

erty is within the "custody and control of the Commonwealth." The Commonwealth does not deny that the new Act's provision on multiple liability, section 15, must be followed here.[5] And surely the Legislature's guides to statutory interpretation sufficiently demonstrate that where, as here, the new and old Acts address the same concerns and employ similar language, the two Acts must be read together. Under 1 Pa.C.S. § 1953, an amending act and an act amended "shall be read together and viewed as one statute passed at one time." And under 1 Pa.C.S. § 1921(c)(8), when the words of a statute are not explicit, legislative intent may be ascertained by considering "[l]egislative . . . interpretations of such statutes." See e. g., *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 380–81, 89 S.Ct. 1794, 1801–1802, 23 L.Ed.2d 371 (1968).

Thus, borrowing from section 3 of the new Act, specifically defining intangibles subject to the Commonwealth's custody and control, it is clear that the intangibles of S & H are not within the Commonwealth's reach under the Act of 1953. S & H is not domiciled in Pennsylvania and therefore the Commonwealth has no custody and control over the funds regardless of whether S & H's records reflect the owner's last known address. The only circumstances in which the Commonwealth may claim custody and control over the non-domiciliary's funds are if the non-domiciliary's records reflect the owner's last known address or if the Commonwealth can prove the owner's last known address. Yet the Commonwealth agrees that neither of these circumstances here are present. Thus, the funds in question are beyond the Commonwealth's reach. The Commonwealth's present petition must be dismissed.[6]

5. See supra at note 1 and accompanying text.

6. Because I am of the view that the property held by S & H is not within the Commonwealth's control, I need not decide whether the property is "abandoned and unclaimed." See Disposition of Abandoned and Unclaimed Property Act, § 11, 27 P.S. § 1–11. See generally, R. Ely, Revision of Pennsylvania's Escheat Laws, 74 Dick. L.Rev. 179, 185 & 187 n. 59 (1970).

I would, therefore, vacate the order of the Commonwealth Court and direct the court of common pleas to dismiss the Commonwealth's petition.

NIX, Justice, dissenting.

Appellee, Charles E. O'Connor, escheator for the Commonwealth of Pennsylvania, sought to escheat the value of about Three Million ($3,000,000.00) Dollars of unredeemed trading stamps issued through retail outlets in Pennsylvania before and during 1962 by appellant, Sperry and Hutchinson Co. (S & H), a New Jersey corporation. After the Petition in Escheat was filed in the Court of Common Pleas for Philadelphia, S & H Co. filed preliminary objections purportedly raising questions of jurisdiction. The Court of Common Pleas dismissed the preliminary objections and an interlocutory appeal was filed in the Commonwealth Court pursuant to the Act of March 5, 1925, P.L. 23, Section 1, *as amended*, 12 P.S. § 672 (1953) (Act). The Commonwealth Court agreed that jurisdictional questions had been properly raised under the Act, but, nevertheless, decided these questions on the merits against S & H Co. This Court granted review because of the importance of the issues presented in this appeal. Regrettably, rather than clarifying the questions that are presented, the majority has seen fit to adopt an unreasonably restrictive interpretation of the Act, contrary to prior precedent and failed to address the most critical

One final observation must be made. Although there is nothing on this record to indicate that any other state presently seeks the funds the Commonwealth claims, there is likewise nothing on this record to indicate that no state will not do so in the future. It is not at all unlikely that while these proceedings are pending another state may establish its priority under *Texas* and assert a claim on the funds. So too, another state might await judgment and, if favorable to the Commonwealth, then assert a claim.

In either case, in light of the Commonwealth's position that it will hold the funds subject to the rights of priority states, one would expect that the Commonwealth will fairly honor the asserting state's claim. Suffice it to say that a policy of cooperation aimed at avoiding unfortunate controversy between states is far more advisable. See *State of New Jersey v. Amsted Industries*, 48 N.J. 544, 548, 226 A.2d 715, 718 (1967).

issue before us. It is for these reasons that I must register my dissent.

The question of jurisdiction over controversies *in rem*, in which rights to property are determined, was formerly decided under the rules of *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1878), and *Harris v. Balk*, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905). Under those decisions, the territorial question of the "situs" of the *res* controlled. However, this test has been replaced by a test based upon the fundamental fairness of subjecting parties claiming rights in the *res* to the jurisdiction of the forum. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).[1] It is quite possible that more than one State may have sufficient contact to allow their courts jurisdiction, albeit not exclusive, over the *res*. In *Western Union Telephone Co. v. Penna.*, 368 U.S. 71, 82 S.Ct. 199, 7 L.Ed.2d 139 (1961), the U. S. Supreme Court determined that the same property cannot be constitutionally escheated by more than one State. Thus, the Court set up a test for determining which State had the claim to escheat superior to all others. *Texas v. New Jersey*, 379 U.S. 674, 85 S.Ct. 626, 13 L.Ed.2d 596 (1965). The threshold issue is whether under the Act we are limited to a determination of the court's power pursuant to the test set forth in *Shaffer v. Heitner*, or whether we may also determine whether this State's claim to escheat is superior to all others. *Texas v. New Jersey, supra.* The majority concludes that the Act does not allow inquiry into the questions presented by the *Texas* decision. This view fails to perceive the true nature of the bar set up in that case and attributes to the Act a restrictive and consistent interpretation that is not justified under prior precedent.

1. The case for applying to jurisdiction *in rem* the same test of "fair play and substantial justice" as governs assertions of jurisdiction *in personam* is simple and straightforward. It is premised on recognition that "[t]he phrase, 'judicial jurisdiction over a thing' is a customary elliptical way of referring to jurisdiction over the interests of persons in a thing." (Citations omitted). This recognition leads to the conclusion that in order to justify an exercise of jurisdiction *in rem*, the basis for jurisdiction must be sufficient to justify exercising "jurisdiction over the interest of persons in a thing." (Footnotes omitted). *Shaffer v. Heitner, supra* at 207, 97 S.Ct. at 2581.

358

The majority attempts to suggest that our decision in *Studio Theaters, Inc. v. City of Washington*, 418 Pa. 73, 209 A.2d 802 (1965) has provided a neat and clear distinction as to what is and what is not jurisdictional for purposes of the Act. They would further suggest that subject matter jurisdiction has been consistently limited, in our cases discussing the scope of the Act, to a question of the competency of a court to hear a particular type of case.

First, if we were to accept the majority's narrow view of the scope of the Act, I am still of the opinion that a *Texas v. New Jersey* challenge would fall within its parameters. Although as a general rule a court may have jurisdiction or competency in *in rem* matters where the requirements of *Shaffer v. Heitner* have been satisfied, the *Texas v. New Jersey* ruling made an exception in escheat cases and added an additional jurisdictional requirement. The power to escheat flows from the sovereignty of the State. *Texas v. New Jersey* provides a basis for determining which sovereign has the power, where there are competing claims of sister States. Thus a determination that a State lacks the power to escheat because of a superior claim relates to the competency of the court in the same manner as a finding that a court was acting without statutory authority. The court's powers are derived from the State, *see Arrott v. Allegheny County*, 328 Pa. 293, 194 A. 910 (1937); *see also Melnick v. Melnick*, 147 Pa.Super. 564, 570 n.2, 25 A.2d 111 (1942); *Cf. Osborn v. United States Bank*, 22 U.S. 326, 381, 6 L.Ed. 204 (1824), thus if the State does not possess the power it cannot confer what it does not have to its courts.[2]

2. Mr. Justice Larsen oversimplifies the inquiry when he attempts to limit the test of subject matter jurisdiction to encompass only the nature of case being considered. For example, the courts of common pleas of this Commonwealth have subject matter jurisdiction over prosecutions for homicide. Yet, even if a Pennsylvania trial court had jurisdiction over the parties through their consent, a Pennsylvania court could not try a person for a homicide that occurred in California. In such an instance the Pennsylvania court would lack subject matter jurisdiction because the crime did not occur in Pennsylvania and Pennsylvania therefore lacked sufficient contacts or interest in the case. Similarly, the Pennsylvania courts have been given the authority to hear escheat matters but in the present case, it

Second, it is clear that our decisions have been far from consistent in determining what is appealable under the Act. Nor has there been consistency in our decisions determining the nature of the complaints that properly fall within the purview of the Act. For instance, we have held the absence of indispensable parties to be jurisdictional under the Act and yet we have concluded that the incapacity of the plaintiff to sue is not jurisdictional. *Smith Estate*, 442 Pa. 249, 275 A.2d 323 (1971); *Dozor Agency, Inc. v. Rosenberg*, 403 Pa. 237, 169 A.2d 771 (1961); *County Construction Co. v. Livengood Construction Corp.*, 393 Pa. 39, 142 A.2d 9 (1958). We have stated that venue does not affect the competency of the court to act, yet we have held that objections to venue are cognizable under the Act. *Helsel v. Rodgers, et al.*, 440 Pa. 516, 269 A.2d 917 (1970). The timeliness of an appeal from the report of the Borough's auditor to the Court of Common Pleas was held not to be jurisdictional, *see Appeal of Washcalus*, 170 Pa.Super. 20, 84 A.2d 220 (1951), but the timeliness of an appeal from the Municipal Court of Philadelphia to the Court of Common Pleas was found to be cognizable under the terms of the Act. *City of Philadelphia v. Goldstein*, 24 Pa.Cmwlth. 434, 357 A.2d 260 (1976).

From the foregoing, it is apparent that the bar established in *Texas v. New Jersey* meets the test of raising a question of subject matter jurisdiction, when that term is used in its purest sense. It is equally as apparent that our case law has not been consistent in a strict adherence to the pure subject matter jurisdictional standard. Further the decisions in this area evidence a tendency to allow interlocutory review of matters raising a fundamental limitation on the court's power to act even though the limitation does not amount to a lack of competency in the purest sense.[3] I therefore agree

is asserted that the contacts and interest are insufficient to allow Pennsylvania courts *to hear and decide* this case. In each instance the power of the court to enter upon the inquiry is called into question.

**3.** From a jurisprudential point of reference, it is more expedient to give the broader scope to the Act, particularly in a case such as the one at bar where the resolution of this preliminary issue may elimi-

with the Commonwealth Court that the question of the application of *Texas v. New Jersey* is properly before us at this time and should have been addressed by the majority.

I am satisfied with the majority's conclusion that the requirements of *Shaffer v. Heitner* were satisfied under the facts of this case. I am troubled by the problems presented by *Texas v. New Jersey* when applied to these facts. I do not believe that the analysis of the majority of the Commonwealth Court on this latter question fully comprehends the complexities of the problems presented. In *Texas v. New Jersey* the U. S. Supreme Court repeatedly stressed the necessity for clarity, predictability and fairness in this area.

> We realize that this case could have been resolved otherwise, for the issue here is not controlled by statutory or constitutional provisions or by past decisions, nor is it entirely one of logic. It is fundamentally a question of ease of administration and of equity. We believe that the rule we adopt is the fairest, is easy to apply, and in the long run will be the most generally acceptable to all the States.

*Id.* at 379 U.S. at 683, 85 S.Ct. at 631.

This case falls within the grey area expressly delineated in *Texas v. New Jersey. See Id.* at 682, 85 S.Ct. at 631. Because of the uniqueness of the facts, the mandated solution for situations, falling within this area, is difficult to apply.[4] To postpone our responsibility to meet the issue at this time and to provide guidance for the courts of this

nate a protracted and expensive litigation only to ultimately reach the same result.

4. Judge Rogers, in a provocative dissent to the majority opinion in the Commonwealth Court, identified some of the questions that should have been considered and resolved in the majority opinion of this Court. *Sperry & Hutchinson Co. Appeal*, 32 Pa.Cmwlth. 599, 607, 379 A.2d 1378, 1382 (1977) (Rogers, J., dissenting). Specifically, Judge Rogers questions the determination that the State of New Jersey does not have a competing claim. Since the requirement of the assertion of a competing claim by a sister State is one of the factors in determining the applicability of the *Texas v. New Jersey* standard, this then becomes a jurisdictional issue.

jurisdiction represents the height of irresponsibility. I dissent.