239 N.J. Super. 257 (1989)
570 A.2d 1313
STATE OF NEW JERSEY, PLAINTIFF,
v.
THE CHUBB CORPORATION, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division Mercer County, General Equity Part.
Decided December 8, 1989.
*258 Robert P. Krenkowitz for plaintiff (Peter N. Perretti, Attorney General of New Jersey, attorney).
Clyde A. Szuch, and James D. Ray for defendants (Pitney, Hardin, Kipp & Szuch, attorneys).
*259 LEVY, P.J.Ch.
Texas v. New Jersey, 379 U.S. 674, 85 S.Ct. 626, 13 L.Ed.2d 596 (1965), sets priorities to resolve disputes between custodial escheators. On motion for partial summary judgment, this court is asked to supplement those priorities, and to permit proof of the State's claim by estimation rather than direct proof. Neither issue has been decided by a court of this State.
Defendants are a group of insurance companies operating in New Jersey. While processing claims and losses resulting from property and casualty insurance contracts, defendants issued thousands of drafts to claimants. Documentation relating to each claim being processed was maintained in a folder, and in each folder it was usual that more than one draft was issued. The drafts were of two types: payments to providers of services, considered to be a liquidated obligation, and payments to claimants, in the form of an offer to settle, subject to acceptance by the claimant. A significant number of these drafts were never paid, and the State seeks custody of the proceeds of all unpaid drafts from June 28, 1967[1] to June 30, 1982.
N.J.S.A. 46:30B-46[2] imposes a duty on a holder of unclaimed funds to report such property to the State Treasurer each year. Implicit in this duty is the obligation to maintain the records necessary to prepare an accurate report. See State v. United States Steel Corp., 22 N.J. 341, 358, 126 A.2d 168 (1956). Defendants have admittedly failed to meet the initial burden of reporting, and apparently they transferred these items to income. Discovery has revealed that defendants have incomplete records of the proceeds of unclaimed drafts, and the State *260 seeks to estimate the extent of those proceeds by extrapolating data found in defendants' records.
During discovery, the parties defined three basic categories of unclaimed drafts. Monthly draft offset reports, prepared by defendants from 1976 through 1984, list drafts that remained unpaid for 365 days after issuance plus some time for follow-up investigation by defendants. Of these transactions, 12,037 were coded with the letter "K" and are known as "K transactions." Each offset report shows the policy number, draft number, issue date and draft amount, but it does not reveal either the payee or the particular defendant for which the draft was issued.
Category 1 consists of K transactions for which claim folders were produced. Defendants produced 4,170 files in category 1 containing records of 4,061 drafts.[3] These folders usually contained some information about the particular payee, such as the payee's last known address. Defendants argue, and the State has not expressly denied, that more than half of the amount claimed by the State is comprised of category 1 drafts which are not properly recoverable by the State under any circumstances. Some of these (approximately 3%) were issued to claimants as an offer subject to acceptance, some were voided for cause, some were duplicate entries on the offset reports, some were subsequently cashed, returned or replaced and some were only cash receipt advices not reflecting any obligations from defendants to any payees.
Category 2 consists of K transactions with no claim folders. The State seeks to prove the amount of category 2 items by utilizing estimation techniques. If such evidence is admissible, defendants seek assurance that the State's witnesses will exclude *261 from their opinions unrecoverable amounts similar to those found regarding category 1 items.
Category 3 consists of defendants' liability for unpaid drafts for 1967-1974, a period for which there are no extant draft offset reports and, indeed, no records of any kind. The State seeks to prove the extent of defendants' liability for that period by extrapolating data from the known K transactions; using four unspecified methods of statistical estimation, the State demanded $1,456,147 for category 3 drafts, based on the lowest amount determined by such methods.
On a motion for partial summary judgment, the State seeks two rulings: (1) that it may take custody of all unclaimed property that has not been paid to another state where the holder of the property is subject to New Jersey jurisdiction, and (2) that it may prove the extent of defendants' liability by estimation. More specific, it claims $3,796,884.83 consisting of $775,078.90 for uncashed drafts from files produced (category 1), $1,565,072 for K transactions on the offset reports for which no files were produced (category 2), and $1,456,147 for the years 1967-1974 where no records are available (category 3).[4]

1. The Extent of Defendants' Liability.
The primary thrust of the State's motion is to establish the general proposition that N.J.S.A. 46:30B-9 is a "catch-all" section of the Uniform Unclaimed Property Act, an act which became effective April 14, 1989. That section says:
Unless otherwise provided in this chapter or by other statute of this State, intangible property is subject to the custody of this State as unclaimed property if the conditions raising a presumption of abandonment under Articles 2 and 5 through 16 of this chapter are satisfied and the conditions under R.S. 46:30B-10 are satisfied. The common law doctrine of bona vacantia shall remain viable with respect to unclaimed property not covered by this chapter or another statute of this State.
*262 The State urges that this section means that the State may take custody of all unclaimed property that has not been paid to another state, as long as the holder of such property is subject to the jurisdiction of the State of New Jersey. Defendants claim that all drafts payable to persons residing outside New Jersey are not subject to the custodial powers of the State, unless those persons resided in a state without a law providing for custodial escheat.
Article 2 (N.J.S.A. 46:30B-7 and -7.1) provides that all intangible property that is owing, in the ordinary course of a holder's business, and unclaimed by the owner for more than five years after it became payable, is presumed abandoned unless there was a communication between the holder and the presumed owner. Article 5 specifically applies the presumption of abandonment of article 2 to drafts.[5] In addition, for property to be subjected to the custody of the State, N.J.S.A. 46:30B-10 requires that: (a) the last known address of the apparent owner, shown in the holder's records, is in this State, or (b) the holder's records do not reflect the identity of the owner but it is established that the last known address of the owner is in this State, or (c) the holder's records do not reflect the last known address of the owner and either the last known address is otherwise established to be in this State or the holder is a domiciliary or governmental agency of this State and has not paid the proceeds to the state of the last known address of the owner, or (d) the holder is a domiciliary or governmental agency of this State, and the last known address of the owner, per the holder's records, is in a state which does not provide for the escheat or custodial taking of such property, or the holder is a foreign nation, or (e) the transaction from which the property arose occurred in this State and the last known address of the apparent owner is unknown or in a state which does not provide for the escheat or custodial taking of such *263 property, and the holder is a domiciliary of a state which does not provide for escheat or custodial taking of such property.
Texas v. New Jersey, supra, is the source of these statutory priorities. That case was brought by Texas against New Jersey, Pennsylvania and Sun Oil Corporation in the original jurisdiction of the Supreme Court of the United States. Texas sought to escheat unpaid debts of the corporation. The state of incorporation was New Jersey, the principal place of business was in Pennsylvania, the debts were recorded in corporate offices in Texas, and Florida intervened as a state of last known addresses. The issue was to determine the one state that should have the right to escheat the unclaimed property, and the Supreme Court established guidelines for making the determination.
Those guidelines relate only to conflicts among states. Nothing in Texas v. New Jersey or in N.J.S.A. 46:30B-10 prohibits a state from claiming custodial escheat of property based on the locale of the transaction or the place of business of the holder being in that state. In State v. Amsted Industries, 48 N.J. 544, 226 A.2d 715 (1967), the court rejected a claim by the State that it could take custody of unclaimed property of persons whose last known address was in a state with an escheat law but where defendant was not authorized to do business, and thus, not subject to service of process. The Court found that this broad application of the Texas v. New Jersey guidelines "entailed little or no danger that the defendant would not ultimately be compelled to honor its responsibility of remitting the unclaimed property to the appropriate creditors' states as evidenced by the last known address." 48 N.J. at 549, 226 A.2d 715. This clearly applies to category 1 items in the matter at bar, but does not relate to the other two categories where there are no recorded last known addresses.
State v. Liquidating Trustees of Republic Petroleum Co., 510 S.W.2d 311 (Tex.Sup.Ct. 1974) appears to be on point. That case involved an action, between a single state and a resident *264 stakeholder, concerning unpaid dividends owed to 208 stockholders, only one of whom had a last known address in that state. In reversing the trial court, the Supreme Court of Texas distinguished Texas v. New Jersey, supra, as a case involving more than one state asserting a claim. The court held that the state was entitled to custody, rather than the holder, and a showing that other "last known address" states had a custodial law similar to that of Texas was insufficient to defeat the claim of Texas when no other such state had asserted a claim. 510 S.W.2d at 315. The court specifically interpreted Texas v. New Jersey as follows:
[W]e interpret that decision to mean that in a suit strictly between the domiciliary State and a resident stakeholder, the State is entitled to a judgment against the stakeholder for custody of the property, subject to some other State coming forward at a subsequent time with proof that it has a superior right to escheat or custody. This is the only interpretation which would permit the purpose of State escheat and custodial laws to be effective as to abandoned properties within the jurisdiction of one State but owed to disappeared persons with last known addresses in States which have no jurisdiction to require reporting or delivery of the property. At least this interpretation and result in the present case would bring the funds into the custody of the State Treasurer of Texas, where reports and procedures would be available under the Texas Act for other States to learn of the funds and assert administratively and in our courts any superior rights which they may claim. [Ibid.]
The court then ordered a judgment against the holder, requiring it to deliver all the funds for which it was sued to the custody of the state treasurer.
Pennsylvania, too, has ruled that the Texas v. New Jersey guidelines were rules of priority and did not affect a claim by a state against a resident holder. The court held that Pennsylvania courts had the power to adjudicate such a claim. See O'Connor v. Sperry and Hutchinson Co., 32 Pa.Cmwlth. 599, 379 A.2d 1378 (Pa. Commw. Ct. 1977), aff'd 488 Pa. 340, 412 A.2d 539 (Pa.Sup.Ct. 1980).
Here the State seeks custody of unclaimed funds from defendants with offices in New Jersey, and defendants are protected by statutory indemnification from liability for claims by other states or by the owners of the funds. See N.J.S.A. 46:30B-65. *265 By allowing a state custody of unclaimed funds, the United States Supreme Court has said: "Such property thus escapes seizure by would-be possessors and is used for the general good rather than for the chance enrichment of particular individuals or organizations." Standard Oil Co. v. New Jersey, 341 U.S. 428, 435-436, 71 S.Ct. 822, 827, 95 L.Ed. 1078 (1951). If the State Treasurer holds the funds, he does so in a fiduciary capacity, with interest accruing for the benefit of the rightful owner. See Safane v. Cliffside Park, 5 N.J. Tax 82, 87-88 (Tax Ct. 1982); N.J.S.A. 46:30B-79.
The funds belong to the owners, not defendants. The public policy supporting escheat is vastly superior to any claim defendants have, as holder, to refuse to report and to refuse to deliver all provable unclaimed funds to the custody of the State Treasurer. Defendants' interests are at odds with the general welfare. To the extent that defendants' success reduces the size of the funds they deliver to the State Treasurer, the public interest is harmed, as there will then be no source from which the true owners can collect. Thus the court concludes that the State is entitled to a partial summary judgment of custody of funds in all three categories which it can prove are represented by drafts unpaid since June 28, 1967.

2. Proof of Damages by Estimation.
Methodology of proof is a matter of fact to be proved at trial rather than by pretrial motion. Evid.R. 9(2)(d) permits the court to take judicial notice of "such facts as are so generally known or of such common notoriety within the area pertinent to the event that they cannot reasonably be the subject of dispute." Evid.R. 56(2) provides that a qualified expert witness may offer opinion testimony "as to matters requiring scientific, technical or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or determine a fact in issue."
*266 For opinion testimony to be admissible evidence, the State must prove that the methodology supporting the opinion is reliable and trustworthy. See State v. Dantonio, 18 N.J. 570, 576-579, 115 A.2d 35 (1955) (reviewing how courts have recognized scientific discoveries and utilized them in trials). Initially, the general accuracy and effectiveness of a particular procedure must be proved by expert proofs, and when such procedures are deemed trustworthy, the evidence is admitted as a matter of judicial notice. Justice Pashman wrote that "[s]cientific evidence is admissible if the proposed technique or mode of analysis has `sufficient scientific basis to produce uniform and reasonably reliable results and will contribute materially to the ascertainment of the truth.'" State v. Cavallo, 88 N.J. 508, 517, 443 A.2d 1020 (1982). When dealing with the admissibility of expert testimony concerning valuation of stock in a closely-held corporation, the Supreme Court held that "a court should not base an opinion on theories of value that lack support in the record, demonstrated market reliability, or general acceptance." Bowen v. Bowen, 96 N.J. 36, 49, 473 A.2d 73 (1984).
The Supreme Court has ruled that Evid.R. 56(2) dictates three prerequisites for the admissibility of expert testimony:
(1) the intended testimony must concern a subject matter that is beyond the ken of the average juror;
(2) the field testified to must be at a state of art such that an expert's testimony could be sufficiently reliable; and
(3) the witness must have sufficient expertise to offer the intended testimony.
See State v. Kelly, 97 N.J. 178, 208, 478 A.2d 364 (1984).
The State does not urge the court to take judicial notice of any of the four methods of approximation or estimation used by its expert. Therefore, in order for its expert to offer an opinion as to the amount of unpaid drafts from 1967 to 1974, where there is no direct evidence of that amount, the State will have to provide a proper foundation to satisfy the second and third criteria of the Kelly case. The unresolved dispute is the reliability of the expert's methods of extrapolation. With such a foundation, the State's experts will be permitted to offer their *267 opinions at trial. To that extent, if the evidence offered is proven sufficiently reliable and if the witnesses have sufficient expertise, partial summary judgment on the second requested ruling is granted.
NOTES
[1] 1967 is significant because N.J.S.A. 2A:37-29 et seq. was enacted on June 28, 1967. This legislation requires holders of unclaimed property to pay the proceeds to the State Treasurer.
[2] This section of the Uniform Unclaimed Property Act, L. 1989, c. 58, replaced N.J.S.A. 2A:37-31.
[3] Although the State demanded production of folders pertaining to each of the 12,037 drafts appearing on the draft offset reports, the rest had been destroyed pursuant to defendants' records retention policy.
[4] The total of these three categories is $3,796,297.90 and there is no explanation for the relatively minor difference of $586.93.
[5] Articles 6 through 16 are not relevant to the within matter.