18 So.2d 598

M. H. NAHIGIAN, Inc., v. HADDAD.

No. 37240.

May 22, 1944.

Eugene J. Coen, of Shreveport, for appellants.

Robert L. Garrett, of Shreveport, for appellee.

HIGGINS, Justice.

On December 20, 1942, the plaintiff, as holder and owner of a series of promissory notes executed by the defendant on January 27, 1931 and June 3, 1931 and maturing before the end of November, 1931, brought this action to recover from the maker of the notes the aggregate sum of $9,486.29, plus interest and attorneys' fees, alleging that while the notes appeared to be prescribed on their faces, they had not prescribed because the defendant had promised payment of all of them in letters and telegrams, thereby renouncing prescription thereon.

The defendant pleaded five years' prescription under the provisions of Article 3540 of the Revised Civil Code and denied that the letters and telegrams were sent in regard to the notes in question but averred that they pertained to an entirely separate and distinct account known between the parties as the "Rosalie Haddad" indebtedness, which was evidenced by other different notes having no connection with or bearing on the notes sued upon.

The plaintiff had the case set for trial on the above issue thirty-nine days after the plea was filed. On the trial there was judgment in favor of the defendant, sustaining the plea and dismissing the suit. The plaintiff applied for a new trial or a rehearing, contending that the notes in question were given for a balance on the old George A. Haddad account and, therefore, constituted a written acknowledgment thereof, converting it from a debt on an open account prescriptible by three years into an ordinary money obligation which was prescribed by ten years, under Article 3544 of the Revised Civil Code. The district judge refused to grant a new trial or rehearing and the plaintiff appealed.

The record shows that the defendant is a retail dealer in oriental rugs and the plaintiff is an importer and wholesaler of the same merchandise. Beginning in 1912, the plaintiff sold rugs to the defendant on credit, the purchases amounting to as much as $100,000 a year. This arrangement proved to be very profitable to the parties until the general depression in 1930–1931, when the defendant became insolvent. It was suggested that he go into bankruptcy but he declined to do so. Being unable to meet his obligations, the defendant gave the plaintiff the series of notes in question, representing the total indebtedness due by him. As the defendant was not dealing only with the plaintiff, he also owed other rug importers and creditors substantial sums of money. Apparently, on account of defendant's hopeless condition and his previous profitable business with them, some of these other dealers released him from the debts he owed them without going into bankruptcy. In the early part of 1932, the defendant went to New York for the purpose of re-establishing a line of credit to re-enter the rug business and contacted the plaintiff. They agreed that the defendant would handle the plaintiff's rugs exclusively, but, as there were other substantial unreleased debts against him, it was decided

that the new account be established in the name of "Rosalie Haddad" the defendant's wife, and that the goods be shipped to her on consignment, in order to prevent the defendant's creditors from seizing them. Under the new arrangement, the plaintiff consigned as the first shipment $25,000 of merchandise to "Rosalie Haddad" care of George A. Haddad. The business between them was handled in this manner until the first part of 1938, when the defendant and his wife again became financially involved and indebted to the plaintiff. On March 14, 1938, upon the plaintiff's demand, the defendant executed notes for the unpaid balance of the Rosalie Haddad account. When the balance of $65 on these notes was not paid, the plaintiff instituted suit against the defendant and his wife in the City Court of Shreveport in October 1942, but before judgment was rendered, the claim was liquidated in full.

From the first part of 1932, when the new account was arranged between the parties, until March 14, 1938, when all business between them ceased, there had not been any payment by the defendant to the plaintiff on the series of notes of 1931, and neither party had mentioned those obligations during that entire period of time.

Beginning in 1939, and running through 1941, the plaintiff wrote the defendant a series of letters demanding the liquidation of both the new and old accounts represented by the notes. The defendant sent the plaintiff letters and telegrams pleading with it for indulgence and asking for the shipment of more merchandise under any circumstances that the plaintiff would consider satisfactory. The plaintiff refused to ship any more rugs to the defendant and the suit in the City Court of Shreveport followed in October 1942, and the present action was filed on December 30, 1942.

Counsel for the plaintiff relies upon the case of Harman & Stringfellow v. Lagrande, 151 La. 253, 91 So. 726, to show that in giving the 1931 series of notes representing the defendant's indebtedness to the plaintiff at that time, he thereby converted the debt from an open account prescribed by three years to a money obligation prescriptible by ten years, under Article 3544 of the Revised Civil Code. In that case, the community of acquêts and gains between the husband and wife owed an account. She died and the father, without being authorized to represent his minor children, executed a note covering the indebtedness. By a divided court, it was held that the father's plea of prescription of five years against the note was well founded, but, as he did not have authority to represent the minors in executing the note, it did not bind them. However, as he did have authority under the law to acknowledge the debt in behalf of the community, the court treated the indebtedness insofar as the minors were concerned as an acknowledged account in writing instead of a note which took the obligation out of prescription of three years and converted it into a debt prescriptible by ten years under Article 3544 of the Revised Civil Code. The case is inapposite here because the defendant herein had the capacity to bind himself to the notes of 1931 and just as the father in the above case was entitled to plead the prescription of five years against his note, so is the de-

fendant in this case within his rights in filing the same kind of plea against his notes. It is our view that the instant case is controlled by the prescription of five years, as provided for in Article 3540 and not by Article 3544 of the Revised Civil Code.

■ As the notes show on their faces that they are prescribed and the plaintiff alleges that there was a waiver of accrued prescription, the burden of proof is upon the plaintiff to establish by a preponderance of the evidence that there was a renunciation of prescription. Waterman v. Dupeire, 180 La. 320, 156 So. 405; Burdin v. Burdin, 171 La. 7, 129 So. 751; and Jelsch v. Laurich, La.App., 187 So. 819.

■ In order to meet this requirement of the law, the plaintiff introduced in evidence a series of letters and telegrams. The trial judge in two written opinions, one on the original hearing, and the other in connection with the refusal to grant a rehearing, or a new trial, gives a detailed analysis of the documents submitted by the plaintiff. He points out that the letters and telegrams refer exclusively to the new indebtedness or the Rosalie Haddad account and not to the George A. Haddad old account or the notes sued upon. In fact, he concludes from the evidence that nothing was said between the parties about the notes of 1931 until 1938.

We have examined these letters and telegrams sent by the defendant to the plaintiff and fail to find where the defendant makes any reference to the indebtedness represented by the notes of 1931.

The defendant testified that under the new arrangement made with the plaintiff in 1932, the plaintiff agreed to forego his claims on the 1931 notes, if the defendant bought all of his merchandise exclusively from him at an increased 25% wholesale price, and that this agreement was carried out by the defendant and, therefore, there was no reason why he, in the letters and the telegrams sent to the plaintiff, should refer any further to the old account, which was considered by the parties as settled. His testimony was not contradicted by the plaintiff and is corroborated by the fact that from 1932 to March 14, 1938, no mention was made of the 1931 notes by either party. The defendant's statement is further borne out by the plaintiff's letter dated February 15, 1938 addressed to "Rosalie Haddad, in care of the Booth Furniture Company, Shreveport, La., for the attention of Mr. George Haddad," in which it is stated: " * * * I want to straighten out the Rosalie Haddad account up to date. I want you to make a draft in full for the additional seven rugs you reported sold as outlined in yesterday's letter. I want you to either return or pay for the five unaccounted for rugs as outlined in that letter and if the seven rugs you reported returned are correct in every way, we will eliminate them from our consignment books, *and everything will be balanced.*" (Italics ours.) It is also significant that there had never been any payment made on account of the 1931 notes, which were twelve years old.

After a careful review of the record, it is our opinion that the evidence shows that

while the defendant acknowledged his indebtedness on the Rosalie Haddad account, which was subsequently liquidated in full, he did not acknowledge his indebtedness on the 1931 series of notes nor in any way renounce or waive accrued prescription thereon.

■ The plaintiff also raised the point on the motion for a new trial that there was an interruption and waiver of prescription by payment on account of the 1931 notes. It appears that M. J. Grogan owed the defendant a note for merchandise purchased. The Commercial National Bank was authorized in March 1938 to collect the note and after its claim against the defendant was settled, to pay the balance of the money to the plaintiff on the Rosalie Haddad account. Upon receipt of the remittance, the plaintiff claimed the right to impute the payment to the old George A. Haddad account or the 1931 notes. Upon the defendant's protest, this was corrected by the plaintiff and the notes given by the defendant to the plaintiff covering the Rosalie Haddad new account were credited with the remittance. It is difficult to understand the plaintiff's position on this score, because nowhere in its petition in the present suit is it alleged that the defendant ever paid anything on account of the 1931 notes. The trial judge properly concluded there was no merit in this contention.

■ In the motion for a new trial, the plaintiff's attorney argued that the old George A. Haddad account and the new Rosalie Haddad account were one and the same, because George A. Haddad was liable on both of them and, therefore, the payment on account of the Rosalie Haddad indebtedness thereby interrupted prescription.

The trial judge properly held that even the parties themselves always considered and treated the two accounts as separate and distinct and not as one. Rosalie Haddad was liable on the new but not the old account. Furthermore, he observed that the defendant and the plaintiff agreed on opening the new account in the name of Rosalie Haddad, and it was understood that in the event the defendant purchased more than $75,000 of rugs at a 25% increased wholesale price, the old indebtedness would be cancelled. The evidence showed that the defendant sold in excess of $75,000 of merchandise purchased exclusively from the plaintiff, in accordance with their agreement, whereby the plaintiff marked up the goods 25% in excess of the regular wholesale price and this increased price was paid during the entire time that the Rosalie Haddad account existed between the parties from 1932 to March 1938. The defendant's evidence in that respect was also uncontradicted and, therefore, the district judge correctly refused to grant a new trial or rehearing.

■ In this Court, the plaintiff, in the alternative, asked us to refer the plea of prescription to the merits and remand the case to the district court in order that the plaintiff might introduce further evidence. In the motions for a new trial and rehearing, the district judge, in refusing to grant them, pointed out that the plaintiff, in a general way, stated that he had additional

evidence but there was no showing at all what this evidence consisted of or that it was newly discovered nor that by the exercise of due diligence it could not have been dis-. covered. He noted that the defendant's pleadings apprised the plaintiff of the specific grounds of the defense that was being made and the plaintiff, if it had any additional evidence, had ample opportunity to present it. Certainly, any knowledge or information that the plaintiff had before the trial cannot be considered as newly discovered evidence. Mr. M. H. Nahigian, who was thoroughly familiar with this matter, elected not to take the stand or to have his testimony taken and it is too late at this time to ask for that consideration.

For the reasons assigned, the judgment appealed from is affirmed at appellant's costs.

PONDER, J., takes no part.