49 N.J. Super. 165 (1958)
139 A.2d 463
THE STATE OF NEW JERSEY, BY GROVER C. RICHMAN, JR., ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
THE SPERRY AND HUTCHINSON COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT. THE STATE OF NEW JERSEY, BY GROVER C. RICHMAN, JR., ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
THE SPERRY AND HUTCHINSON COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 4, 1958.
*166 Messrs. Carpenter, Bennett, Beggans & Morrissey, attorneys for plaintiff (Mr. Elmer J. Bennett, of counsel).
Messrs. Stryker, Tams & Horner, attorneys for defendant (Mr. Josiah Stryker, of counsel).
WICK, J.S.C.
This is a consolidated escheat action, one for absolute escheat under N.J.S. 2A:37-11 through 2A:37-28; the other under the Custodial Escheat Act, N.J.S. 2A:37-29 through 2A:37-44.
In the action for absolute escheat N.J.S. 2A:37-13 provides:
"Whenever the owner, beneficial owner or person entitled to any personal property within this state, has been or shall be and remain unknown for the period of 14 successive years, or whenever the whereabouts of such owner, beneficial owner or person, has been or shall be and remain unknown for the period of 14 successive years, or whenever any personal property wherever situate has been or shall be and remain unclaimed for the period of 14 successive years, then, in any such event, such personal property shall escheat to the state."
To define the term "personal property," the Legislature enacted N.J.S. 2A:37-11, which reads:
"The term `personal property' as used in this article shall mean and include monies, negotiable instruments, choses in action, interest, debts or demands due to the escheated estate, stocks, bonds, deposits, machinery, farm crops, livestock, fixtures, and every other kind of tangible or intangible property and the accretions thereon, up until the time of the commencement of the action for escheat, but shall not mean and include real property or property in the custody of any court in this state, nor any personal property covered by * * * chapter 154 of the laws of 1946."
In the action for custodial escheat, the applicable section N.J.S. 2A:37-29 reads:
*167 "In addition to the method provided for the escheat generally of personal property as defined in article 2 of this chapter, an alternative method may be employed in certain cases defined in this article 3. By this latter method the state may take into its protective custody property consisting of cash, dividends, interest or wages owned by a corporation organized or doing business under the laws of this state, belonging to any person remaining unknown, or whose whereabouts is unknown, or whose property remains unclaimed as defined herein for a period of 5 successive years; and after a period of protective custody has expired as herein prescribed, the state may proceed to escheat such property to itself."
Our courts have taken the broad view that the general public shall be the beneficiary of abandonment by construing both the 14-year and the 5-year statutes liberally in favor of the State. In State by Van Riper v. American Sugar Refining Co., 20 N.J. 286 (1956), Justice Jacobs said:
"New Jersey's quest for legitimate revenues to be used for the good of all of its citizens is in nowise to be condemned and its right to the unclaimed dividends is admittedly superior to that of the corporation which had custody but no moral or legal claim to their retention."
Again, in dealing with the present custodial portion of this case. State by Richman v. Sperry & Hutchinson Co., 23 N.J. 38 (1956), on appeal after dismissal on motion, Justice Jacobs for the Supreme Court, in discussing the underlying public policy of escheat, said:
"We reaffirm the foregoing approach and reject the Chancery Division's view that the Custodial Escheat Act, (L. 1951, c. 304  now N.J.S. 2A:37-29, N.J.S.A.; N.J.S. 2A:37-30, N.J.S.A.) is, in this proceeding between the State and the defendant stakeholder or obligor, to be viewed as a penalty enactment and to be construed narrowly. Insofar as the unknown owners or claimants are concerned they are not adversely affected by the act; on the contrary its provisions have the remedial effect of increasing the period during which they may assert their claims without being barred by limitations."
And further:
"* * * Insofar as the defendant stakeholder or obligor is concerned the act likewise would have no significantly adverse effects, *168 for such defendant would have no just claim to retain the moneys for its own benefit and its payment to the State Treasurer would protect it against later action by the unknown owners or claimants."
Testimony adduced discloses that this defendant carries on a unique business. It was organized in 1900 as successor to an earlier partnership, to promote the retail sales of its dealers by offering to the customers of the retailers S & H Cooperative Cash Discount Stamps in the form of a cash discount. In accomplishing this purpose, the company licenses groups of retail merchants in various trading areas to issue the stamps, commonly known as "S. & H. Green Stamps," to their customers at the rate of one stamp for each ten cents of purchase in cash. The customers accumulate these stamps, place them in books provided through the retailers or the company, and then later when the books are full or partially full, present them to the company for redemption. The business is conducted on a national scale, and to meet various statutory requirements and area practices different plans are in effect in different states and areas of states. One plan redeems only in merchandise, another redeems only in cash, and another the company's merchant licensee redeems in merchandise and the company reimburses the licensee in cash. The defendant over the years, by advertisement, notice in the stamp books, pamphlets showing items offered for redemption and public acceptance, has persuaded the stamp-saving public that redemption is made in terms of full books, or fractions not less than one quarter of a full book. Defendant contends the success of its business depends upon the continuation of this current and accepted notion in order that the stamp-savers return to their regular sources of supply, even though the defendant may legally be required to redeem in cash a lesser number of stamps than a full book. Upon the accumulation of a sufficient number of stamps the customer takes or sends the stamps to a redemption center or warehouse and receives the item desired. The considerable volume of business done in trading stamps and their redemption proves that retail *169 customers take advantage of the cash discounts thus offered and the merchandise they can obtain by redemption.
Since 1900 stamps have been given to many retail customers who did not accumulate them, or lost or destroyed them. The State contends that the stamps issued for the purpose of the Absolute Escheat Act to the cut-off date by suit, January 26, 1946, is 65,672,253,601; and that the stamps issued for the purpose of the Custodial Escheat Act to the cut-off date by suit, January 26, 1950 is 91,390,397,953; and of this number issued that 5% are unredeemed.
The State, in order to effect the escheat of the unredeemed value of the stamps issued, asserts that the defendant in contending its claim that its duties and obligations are as contained in its various written documents, the license agreements, stamp books, stamps and catalogues, are incomplete, self-contradictory and inconsistent with the defendant's actual practice. Excerpts of records of other cases in which the defendant was a party were admitted into evidence, which indicated that the defendant has in the past permitted the stampholders to elect their own method of redemption so that both the C & M and the direct redemption plans were used interchangeably and without regard to the words of the notices in the stamp books. In fact, none of the C & M books offered in evidence, informs the collector that the book must be presented to a merchant for redemption. Thus, by usage has the company permitted the stampholder the greatest latitude in electing methods of redemption, many inconsistent with the notice in the stamp books, and many contrary to the licensing agreements. Evidence of usage, custom and practice over long periods of time in contravention of written contracts, is admissible to show methods of operation in which the public has an interest. Moses v. Edward H. Ellis, Inc., 4 N.J. 315 (1950); Independent Directory Corporation v. Sherman Industrial Corporation, 6 N.J. Super. 32 (App. Div. 1949); Mantell v. International Plastic Harmonica Corp., 141 N.J. Eq. 379 (E. & A. 1947).
*170 Following the reasoning that the unredeemed stamps represent a value or property to be escheated, the State says that the defendant has always insisted that the stamps are issued at the time of purchase and are given as an evidence and as a discount for cash received; that the trading stamp is given only as a discount for cash; that it is earned by the holder by paying cash for goods to the benefit and advantage of the merchant, and that it is therefore "something for something"; that where trading stamps or coupons are given out to cash purchasers as a discount to encourage cash trade, that this is not giving something for nothing, but something for something; and that every stamp issued is a liability redeemable on presentation. Evidence produced shows that the defendant will at all times, upon request, redeem its stamps in cash or merchandise at the option of the holder; or that the stamps are redeemable in cash or in merchandise at the option, not of the company, but of the holder; or further that the giving of such stamps is not the giving of a commodity, and this for the reason that the recipient has the right to demand cash at his election.
Finally, the State contends that the defendant has voluntarily and consistently filed its tax return each year on the basis that not more than 95% of the stamps issued would ever be redeemed; that in the 60th Anniversary Brochure (1956) under the heading "High Redemptions Are the Key to S & H Success.", it was said, "For more than 30 years, the Treasury Department of the United States has, in connection with the income tax of the Sperry & Hutchinson Company, regularly examined the books of this Company, and has concluded that 95% of the trading stamps issued by the Company are redeemed. The Sperry & Hutchinson Company has, for more than 30 years, prepared and filed its income tax returns on that basis"; that on May 29, 1928 the company by appropriate resolution declared that a reserve of 95% was ample to meet the stamp obligations from January 1, 1914 and for stamps issued thereafter; and that *171 therefore the State should be permitted to escheat the unredeemed 5%, which it assumes to be accurate and equitable.
The defendant by way of defense says that the stamps are redeemable in merchandise or cash depending upon the provisions of the particular contract; that no person can acquire any enforceable claim against the defendant without the possession of a prescribed minimum number of stamps; that defendant has no obligation to redeem any stamps unless the prescribed minimum number acquired is actually presented for redemption; that the defendant has no knowledge or information sufficient to form a belief whether any holder of said stamps held the prescribed number thereof acquired in accordance with the applicable contract 14 years or more prior to the institution of the suit or whether, if any such holder exists, he now has possession of such stamps and can present them for redemption; that any judgment which requires defendant to honor in favor of the State any alleged claims with relation to its stamps without establishing the existence of valid claims acquired 14 years or more prior to the action would violate paragraphs 1 and 20 of Article I of the Constitution of 1947 of this State and the 14th Amendment of the Constitution of the United States, and if the statute under which the suit is brought was so construed, it would conflict with Article IV, Section VII, paragraph 3, of the Constitution of 1844 and of the 1947 Constitution of this State, and Article I, Section X, paragraph 1 of the Constitution of the United States, in that it would impair the obligation of the contract between the defendant and the holder of its stamps.
The defendant contends in furtherance of its defenses that the State has failed to show (1) that some person or persons had a full book or books of stamps, which upon presentation to the defendant, it would have been obliged to redeem; (2) such book or books of stamps were preserved and at the date of the institution of suit either were or could have been presented to the defendant; and (3) such book or books of stamps were of a determinable value, either in cash (at 1 mill or 1 2/3 mills) or in merchandise, or *172 where the holder had the option, in either merchandise or cash That asserting the supposed rights of others, and dependent upon proof of those rights, the State has proved no rights whatever.
The State, through the enactment of the statute and its amendment by this action, seeks to recover for itself that which is owned or owed by someone, known or unknown. The act defines property which it encompasses, and the court is bound to determine the matter within accepted definitions of property. The statute does not escheat balances of an individual or corporation merely because they cannot be accounted for; it does escheat property owned by or owed to persons known or unknown, and deemed to have been abandoned by them. In State by Parsons v. Standard Oil Co., 5 N.J. 281 (1950), Justice Heher said:
"The State's right is purely derivative; it takes only the interest of the unknown or absentee owner. If the remedy has been extinguished by the statute of limitations, the State is under like incapacity. The State takes only the creditor's right; it cannot create or revive an obligation that had no existence or had become extinct."
In State v. Otis Elevator Co., 12 N.J. 1 (1953), the late Chief Justice Vanderbilt said:
"In this case the State is coming into court to assert its derivative, residual rights to the personal property of unknown or absentee owners, State by Parsons v. Standard Oil Co., supra, 5 N.J. 281, 297 (1950). Its standing is neither greater nor higher than that of the unknown or absentee individual owners."
As was noted before, fundamental to the issue is whether the State has proven that unpresented, unredeemed stamps can be considered as falling within the definition of property as contained in the statute. Our own trading stamp act, R.S. 45:23-3 in part says:
"A person who sells or issues to any person engaged in any trade, business or profession any trading stamps shall, upon presentation thereof for redemption in number or quantity aggregating in money value not less than five cents on each lot, redeem the same, *173 either in goods, wares or merchandise or in lawful money of the United States at the option of the holder thereof, at the value in lawful money printed on the face thereof, * * *." (Italics mine.)
The escheatable property, if any exists, is that which the recipient of the stamps had and have not seen fit to redeem, not the balance in the company's hands set aside for their possible redemption. State by Parsons v. Standard Oil Co., 5 N.J. 281 (1950); State v. Otis Elevator Co., 12 N.J. 1 (1953). The statute cannot create or revive obligations which never existed, and by statute, contract and practice, the cash or merchandise can only go to the collector of stamps upon presentation of stamps as required thereby.
In all cases heretofore determined the State was able to clearly show that certain debts or claims were due and payable to certain individuals known to be in existence at that time, but whose whereabouts or successors at the time of the action were unknown. In this case all the State can show is that in the past the company has issued a certain number of stamps to its licensees who are presumed to have passed them on to their customers, and that approximately 5% of those issued have not been redeemed. Who are those persons, and in what amounts have they received the stamps which are unredeemed? No one can tell.
Both parties cite State v. Fidelity Union Trust Co., 25 N.J. 387 (1957) as sustaining their respective positions with regard to the escheatability of the unredeemed stamps. The court interprets its applicable meaning to be that where escheat depends alone on a presumption of abandonment arising from failure to present stamps for redemption for 14 years and there being no other proof of abandonment, that the stampholders cannot, without more, be presumed to have abandoned their rights because 14 years had not run at the time of the commencement of this action.
As Justice Oliphant said in State v. United States Steel Corp., 12 N.J. 38 (1953):
"It is a well-settled principle that escheat and forfeiture are not favored by the law, and any doubt as to whether property is subject *174 to escheat is resolved against the State. 19 Am. Jur., sec. 14, p. 387."
Assuming the State to have shown that the unredeemed stamps represented property within the statutes, these cases must also fail for the reason that the 5% figure of lapse which the State has used to determine the escheatable amount into dollars and cents is at most a compromise based upon a figure used by the Internal Revenue Service in its tax problems with the defendant. While it might be evidential, as well as the audit reports of various years of operation, it surely cannot be deemed and accepted to prove with that degree of certainty which is required to prove damages in a civil action. In this respect the State has failed to carry the burden of proof required of it to warrant the award of a judgment for a specific and certain amount.
Judgment will be entered in conformity with the above, without costs.