561 So.2d 712 (1990)
LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY, d/b/a Blue Cross of Louisiana
v.
Shirley McNAMARA, Secretary of the Department of Revenue and Taxation, State of Louisiana.
No. 89-C-2091.
Supreme Court of Louisiana.
April 30, 1990.
*714 Daryl Manning, Cheryl L. Duvieilh, and Marlon Harrison, Baton Rouge, Dept. of Revenue & Taxation, for applicant.
Edward Bergin, David Radlauer, and Alexander Trostorff, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for respondent.
DENNIS, Justice.
In this case we must determine whether certain obligations owed by the plaintiff to its policyholders, represented by uncashed health and accident insurance benefit checks, were extinguished by prescription before they became "abandoned property" within the meaning of the Uniform Disposition of Unclaimed Property statute, former La.R.S. 9:151 et seq.[1] The court of appeal held that these obligations were subject to either the contractual prescriptive period contained in the policies or the five-year prescriptive period of La.C.C. art. 3540 (1870), but that in either case they had prescribed prior to the lapse of the seven-year period necessary for a presumption of abandonment under La.R.S. 9:160. The court thus reversed the trial court and held that the plaintiff was not required to pay the value of the obligations to the Department of Revenue and Taxation. Louisiana Health Serv. & Indem. Co. v. McNamara, 547 So.2d 1071 (La.App. 1st Cir.1989). For the reasons set forth herein, we affirm. The issuance of the checks constituted an acknowledgment of the debt that interrupted prescription. The issuance of these negotiable instruments also implied a novation of the obligations, so the five-year prescription of negotiable instruments applies. Since this prescriptive period had elapsed prior to the accrual of the seven-year period required for the obligations to *715 be deemed "abandoned property," the civil obligations were extinguished before they became abandoned. Accordingly, the plaintiff is not required to remit any funds to the Department.

Background
Plaintiff Louisiana Health Service and Indemnity Company operates as Blue Cross of Louisiana. Its business is writing hospitalization and health insurance policies. Pursuant to the Uniform Disposition of Unclaimed Property Act, La.R.S. 9:151 et seq., the Department of Revenue and Taxation, the collecting agency under the statute, performed an audit in December of 1985 to determine whether LHSIC was holding any property that had been unclaimed for more than seven years and was thus presumed abandoned under La.R.S. 9:160. This audit disclosed that between July 1, 1974, and June 30, 1978, the plaintiff issued checks to its policyholders totalling $320,559.51 that were never cashed. These checks represented benefits payable to the policyholders pursuant to the terms of the policies. Similarly uncashed checks totalling $117,502.18 were issued between July 1, 1978, and June 30, 1979. Because these checks had been outstanding for more than seven years at the time of the audit, the Department took the position that the obligations represented by the checks issued before July 1, 1978, were "abandoned." The Department demanded that LHSIC deliver this abandoned property by remitting $320,559.51 to the Department.
LHSIC disputed its liability for this amount on the grounds that its obligations under its policies had prescribed prior to the passage of seven-year statutory period. It contended that the policies contained contractual limitations periods ranging from one to two years, or alternatively that the five-year prescriptive period of La.C.C. art. 3540 (1870) applicable to negotiable instruments controlled. The Department, however, contended that the ten-year prescriptive period for personal actions of La. C.C. art. 3544 (1870) applied to these obligations. LHSIC remitted the funds to the Department and then brought the present suit seeking recovery of its remittance as payment of a thing not due and a declaratory judgment to the effect that it is not obligated to pay the amount the Department claims is due on the 1978-79 checks. LHSIC moved for summary judgment. The Department likewise sought summary judgment declaring the funds abandoned and ordering LHSIC to remit additional funds covering uncashed checks issued between July 1, 1978 and June 30, 1981.
The district court concluded that the ten year prescriptive period applied, but that it could not grant the Department's motion because it had not filed a reconventional demand seeking such relief. The court therefore issued a declaratory judgment stating that the ten year prescription was applicable to these obligations. The court of appeal reversed. It concluded that either the one and two year periods contained in the various policies or the five year prescriptive period applicable to negotiable instruments applied to these obligations. It did not determine which applied, however, because the application of either of these periods would result in the obligations having prescribed prior to the property becoming "abandoned" by being unclaimed for seven years. 547 So.2d 1071 (La.App. 1st Cir.1989). We granted writs. 551 So.2d 1310 (La.1989).

Effects of the Unclaimed Property Act
At common law, escheat was the means by which land returned to the tenant's lord or to the king when some event obstructed the usual course of descent. This was an outgrowth of the feudal tenure system of landholding whereby the king was recognized as the ultimate owner of all real property. 1 D. Epstein, A. McThenia & C. Forslund, Unclaimed Property Law and Reporting Forms § 1.01 (1989). The doctrine of bona vacantia was applied to personal property in similar situations, although in the case of personal property royal ownership was based upon the absence of any other owner rather than the Crown's claim as ultimate owner. Id. § 1.02. In this respect, it was similar to the civilian analogue of escheat, déshérence, whereby the state acquires the property of a succession if there are no heirs. 3 M. Planiol & G.
*716 Ripert, TraitéÉlémentaire de Droit Civil Nos. 1922-1925 (La.St.L.Inst.trans.1959); cf. La.C.C. art. 902. The American states, as successors to the royal sovereign, adopted the common law of escheat and bona vacantia as incidents of their police powers to deal with ownerless property. 1 D. Epstein, A. McThenia & C. Forslund, supra, § 1.04. By the late nineteenth century, many states had enacted statutes providing for this power to claim property identified as ownerless. Id.; cf. Connecticut Mutual Life Ins. Co. v. Moore, 333 U.S. 541, 68 S.Ct. 682, 92 L.Ed. 863 (1948).
The most common modern form of unclaimed property legislation is exemplified by the 1954 and 1981 versions of the Uniform Disposition of Unclaimed Property Acts. These are "custodial" escheat laws. Holders of property that is deemed abandoned by virtue of its having been unclaimed for a certain period of time are required to report its existence to the state. If the owners are not found, the property is turned over to the state, which holds it in perpetual custody for the missing owner. 1 D. Epstein, A. McThenia, & C. Forslund, supra, § 1.06[2]. The distinctive feature of these statutes is that the state's claim to the property derives from the claim of the absent owner, rather than any claim to ownership by the state in its own right. Id. § 3.02. Although one purpose of such acts is to protect the missing owners, the primary rationale behind this legislation is its use as a revenue raising device. Pending a claim by the missing owner, the state receives the use of the property as well as any income that it may provide. These acts reflect a policy that unclaimed property should benefit the general public rather than the holders of the property. Id. § 1.07.
The Louisiana legislature, in Act 146 of 1972, enacted an adaptation of the 1954 Uniform Disposition of Unclaimed Property statute as La.R.S. 9:151 to 9:182. The statute defines a "holder" as "any person in possession of property subject to this chapter belonging to another, or who is trustee in case of a trust or is any person indebted to another on an obligation subject to this chapter." La.R.S. 9:152(5). An "owner" is defined as, inter alia, "a creditor, claimant, or payee in case of other choses in action."
The statute specifies the conditions under which property is presumed to be abandoned. Different criteria are used to apply this presumption to bank accounts, § 153, life insurance and annuity proceeds, § 154, utility deposits and refunds, § 155, corporate stock and dividends, § 156, property of dissolved business associations, § 157, property held by fiduciaries, § 158, property held by courts or other public bodies, § 159, and property held by political subdivisions of the state, § 159.1. The relevant provision in this case is the residual section that applies to property held in the ordinary course of business. That section provides:
All funds and intangible personal property, not otherwise covered by this Chapter, including any income or increment thereon and deducting any lawful charges, that is held or owing in this state in the ordinary course of the holder's business and has remained unclaimed by the owner for more than seven years after it became payable or distributable is presumed abandoned. La. R.S. 9:160, as amended by Act 204 of 1984 (emphasis added).
Holders of such property are required to file a verified report with the Department of Revenue and Taxation that identifies the owner and his address, a description of the property, and other information. La.R.S. 9:162. The holder must deliver the abandoned property to the state, which takes custody of the property on behalf of the true owner. The statute provides in pertinent part:
Every person who has filed a report as provided by R.S. 9:162 shall ... pay or deliver to the collector all abandoned property specified in the report after first deducting therefrom cost of preparing and mailing the notice.... La.R.S. 9:164 (emphasis added).
Abandoned property other than money is sold at public sale. La.R.S. 9:170. From the proceeds of these sales, along with any cash delivered, the collector retains an *717 amount sufficient to cover the cost of collection and the sum of $50,000 to cover the claims of owners. The balance of the funds are remitted to the state treasurer and placed in the state general fund. La. R.S. 9:171.
Based upon this statute, as interpreted by the court of appeal in Louisiana Health Services, Inc. v. Collector of Revenue, 293 So.2d 663 (La.App. 1st Cir.1974), the Department required LHSIC to remit money equal to the amounts of the uncashed checks. This interpretation, however, overlooks both the explicit statutory language and the concept of a custodial escheat law, and is inconsistent with other areas of our law. We conclude that a proper interpretation of the statute requires delivery to the Department of the obligation underlying the uncashed checks, rather than funds otherwise owned by the holder. In the present situation, the Unclaimed Property law effects a statutory assignment of the rights of the owner to the Department, and "delivery" on the part of the holder merely requires that the holder provide performance of the obligation to the Department to the same extent it would be bound to do so to the owner.
The abandoned property here, as defined by § 160, is the "intangible personal property ... owing in this state in the ordinary course of the holder's business." This statutory language refers to the contractual obligations of LHSIC to pay its policyholders claims once the conditions set forth in the policy are met. Although "intangible personal property" is a common law term, our own civil law recognizes such obligations as incorporeal movables. La. C.C. art. 473. Such incorporeal movables are property, and they form part of the patrimony of both the obligee, as an asset, and the obligor, as a liability. A. Yiannopoulos, Civil Law of Property §§ 13, 77, 78, in 2 Louisiana Civil Law Treatise (1966). Although theoretically this property would be considered "held" by the obligee because he is the one who has the power to make use of it, the statute identifies the obligor as the "holder" for the purposes of the Unclaimed Property law. La.R.S. 9:152(5). Accordingly, the obligor bears the responsibility of both reporting and delivering the property to the Department. La.R.S. 9:162 & 164.
Other states have recognized that it is the obligation itself, rather than the monies represented by uncashed checks, that the state may claim under custodial escheat statutes. In State v. Sperry & Hutchinson Co., 49 N.J.Super. 165, 139 A.2d 463 (Ch.Div.1958), aff'd, 56 N.J.Super. 589, 153 A.2d 691 (App.Div.1959), aff'd, 31 N.J. 385, 157 A.2d 505 (1960), the state sought to take custody of personal property consisting of the obligations of a trading stamp company to redeem those stamps never presented for redemption. It was determined that approximately 5% of the stamps issued were never redeemed, and the state sought to collect money equal to the value of that 5%. The court rejected this approach, stating:
The escheatable property, if any exists, is that which the recipient of the stamps had and have not seen fit to redeem, not the balance in the company's hands set aside for their possible redemption. 139 A.2d at 467 (emphasis added).
Similarly, with regard to obligations owed by insurance companies, courts have held that the state is required to prove the existence and validity of the obligations before it becomes entitled to payment. See Aetna Cas. & Sur. Ins. Co. v. State ex rel. Eagerton, 414 So.2d 455 (Ala.1982); Allstate Ins. Co. v. Eagerton, 403 So.2d 172 (Ala.1981); Kane v. Insurance Co. of N. America, 38 Pa.Cmwlth. 42, 392 A.2d 325 (1978).
Since the abandoned property in this case, as defined by § 160, is the contractual obligation of LHSIC, the next question is what constitutes "delivery" of such an incorporeal movable for the purposes of § 164. The Department claims that delivery is accomplished by the transfer of funds in an amount equal to the alleged value of the obligations. This approach, however, confuses the contractual obligations, which are the abandoned property that the statute requires to be delivered, with the asserted value of those obligations, which is the actual money. This *718 money does not belong to the owner of the obligations; it is owned by the holder. The issuance of a check does not act as an assignment of funds, La.R.S. 10:3-409, and the drawer of a check may be charged only upon presentment of the check for payment, La.R.S. 10:3-501. Issuance of the uncashed checks did not transfer ownership of any money to the missing owners. The state's power to take custody of the property arises from the absence of the owner, but the owner of these funds, LHSIC, is not absent and is actively asserting its rights. Indeed, the taking of money from its owner, as opposed to taking custody and enforcing the obligations belonging to an absentee, would violate our constitutional prohibition against the taking of property without just compensation. La. Const. art. 1, § 4.
In most situations addressed by the Unclaimed Property law, this distinction may be irrelevant. For instance, the ownership of a bank account is essentially the same as ownership of the money held in the account, because the bank has no adverse claim to ownership of that money. See, e.g., Security Savings Bank v. California, 263 U.S. 282, 44 S.Ct. 108, 68 L.Ed. 301 (1923). Fiduciaries hold identifiable property for specific persons. The sui generis contract of life insurance also has aspects similar to deposit, especially as regards annuities and the cash surrender value of policies. In these cases, and in others contemplated by the Unclaimed Property law, there is specific property, be it money or other property, that clearly belongs to someone other than the person holding the property, and the person holding the property would have no defense to an action for recovery brought by the true owner.
In the case of contractual obligations such as those allegedly due here, however, the obligation to pay is contingent upon the fulfillment of the terms of the contract. The fulfillment of those terms may be uncertain, and even if they are fulfilled the extent of the obligation may not be readily apparent. Because of the uncertain nature of such rights, the obligor is protected by liberative prescriptive periods after which no claim can be made. Unlike statutes of limitations at common law, which are merely procedural bars to the enforcement of obligations, civilian prescriptive periods act to extinguish the civil obligation to which they apply. The patrimony of the obligor is increased when a claim prescribes, and his right to plead prescription in defense to a claim on the obligation is itself property that cannot be taken from him. Therefore, in taking custody of this unclaimed property, the state may demand delivery only of that property that actually belongs to the absentee, i.e., the right to pursue the claim subject to the adverse claims and defenses of the obligor; it cannot simply expropriate money belonging to the obligor. This limitation on the power of the state was implicitly recognized in the 1972 act's provision allowing the holder to interpose a plea of prescription against the state. La.R.S. 9:168.
In light of the unique nature of the incorporeal movable property encompassed by § 160, we conclude that such obligations are delivered in compliance with the statute if they are reported to the Department and the Department is given the power to enforce the obligations on behalf of the owners. The act effectively operates as a statutory assignment of the owners' rights to demand performance of the obligations. Because the state acts as a custodian for the true owner, the holder's defenses against an action by the owner may be asserted against the Department as well. In the present case, LHSIC claims that it is not obligated to the Department because its obligations under the contracts prescribed prior to the lapse of the seven-year statutory period required for the obligations to be presumed abandoned. If this contention is correct, the civil obligations ceased to exist, and no property ever became abandoned. We now consider the merits of the prescription claim to determine whether the Department may validly demand payment.

Prescription
The obligations sought to be enforced by the Department are subject to *719 contractual prescriptive periods ranging from one to two years. While prescriptive periods may not be lengthened as a matter of public policy, see, e.g., La.C.C. art. 3471; E.L. Burns Co. v. Cashio, 302 So.2d 297 (La.1974), such periods may be shortened upon agreement of the parties, Symeonides, One Hundred Footnotes to the New Law of Possession and Acquisitive Prescription, 44 La.L.Rev. 69, 135 n. 100 (1983); 12 Aubry & Rau, Droit Civil Francais, Prescription § 774 ter, in 5 Civil Law Translations 450 (La.St.L.Inst.trans.1972). Indeed, the contractual provisions here were inserted in compliance with La.R.S. 22:213(A), which requires that contracts of health and accident insurance include a provision limiting actions on the policy to one year from the date proofs of claim must be filed. The parties agree that had these contractual periods not been interrupted, the obligations would now be prescribed.
LHSIC, however, issued checks to its policyholders. The issuance of these checks constituted acknowledgment of the debts and thus interrupted prescription. La.C.C. art. 3520 (1870). The Department contends that, in addition to acknowledging the debt, the issuance of the checks created new obligations to pay money that are subject to the prescription of ten years applicable to personal actions under La.C.C. art. 3544 (1870). Under the Department's theory, the obligations still existed when the seven-year period of La.R.S. 9:160 was elapsed, and the obligations thus became abandoned property subject to reporting and delivery.
The effect of an acknowledgment that interrupts prescription depends upon the nature of the acknowledgment. La.C.C. art. 3464 comment (f). Some cases have held that the ten-year prescriptive period was applicable following acknowledgment, see Jones v. Butler, 346 So.2d 790 (La.App. 1st Cir.1977); T.E. Mixon Lumber Co. v. Boutte, 191 So.2d 165 (La.App. 3rd Cir. 1966), while others have applied the five-year prescription applicable to negotiable instruments, see M.H. Nahigian, Inc. v. Haddad, 205 La. 1009, 18 So.2d 598 (1944); Roper v. Newman, 344 So.2d 117 (La.App. 2d Cir.1977).
The court of appeal properly noted the distinguishing features between these two lines of cases. In an ordinary case, the acknowledgment of a debt does not change the applicable prescriptive period; it simply cancels the time that has already run and causes the prescription to begin running anew. La.C.C. art. 3466; Comment, Interruption of Prescription by Acknowledgment in Louisiana, 14 Tul.L. Rev. 430 (1940). In some cases, however, the debtor not only acknowledges the existence of the debt, but he also substitutes a new obligation with a longer prescriptive period in place of the original obligation. In this situation, the old prescription is interrupted, and the new prescriptive period is that applicable to the new obligation. 28 Baudry-Lacantinerie & Tissier, Traité Théorique et Pratique de Droit Civil, Prescription Nos. 551-554, in 5 Civil Law Translations 271-73 (La.St.L.Inst.trans. 1972). Our courts have generally interpreted acknowledgment by notes or checks to constitute implicit novations of the obligations whenever this interpretation is favorable to the creditor. Compare M.H. Nahigian, Inc. v. Haddad, supra; Jones v. Butler, supra; Roper v. Newman, supra; and T.E. Mixon Lumber Co. v. Boutte, supra (substituting longer five and ten year prescriptive periods for original three year periods following written acknowledgment) with Louis Werner Saw Mill Co. v. White, 205 La. 242, 17 So.2d 264 (1944); Succession of Agamy v. Merrill Lynch, Pierce, Fenner & Smith, 487 So.2d 579 (La.App. 4th Cir.1986); and Mid-State Homes, Inc. v. Davis, 250 So.2d 836 (La. App. 4th Cir.1971) (refusing to substitute shorter five year prescriptive period for original ten year periods following acknowledgment via negotiable instruments).
Thus the appropriate prescriptive period following an acknowledgment is the longer of either the original prescriptive period or that applicable to a substituted obligation. In cases such as Jones v. Butler and T.E. Mixon Lumber Co. v. Boutte, supra, written acknowledgments of the *720 debts converted the obligations from loans of money or debts on open accounts, respectively, to innominate written personal obligations to pay money, and thus the courts applied the ten-year prescriptive period for personal obligations found in La. C.C. art. 3544 (1870). On the other hand, the obligors in M.H. Nahigian v. Haddad and Roper v. Newman, supra, acknowledged their obligations by giving notes and checks, respectively. The courts thus held that the five-year period of La.C.C. art. 3540 (1870) applicable to negotiable instruments had been substituted. As the court of appeal stated in Roper v. Newman, "The substituted prescriptive period depends upon the nature of the substituted obligation." 344 So.2d at 118.
In the present case, LHSIC acknowledged the debts by issuing checks. Negotiable instruments such as checks are subject to the five year prescriptive period of La.C.C. art. 3540 (1870). Accordingly, the five year prescriptive period was substituted for the original contractual limitations period, and the obligations of LHSIC prescribed five years after the date of the checks. Since the seven-year period for abandonment under La.R.S. 9:160 commenced on the date the checks were issued, LHSIC's obligations had prescribed prior to the accrual of that seven-year period. Accordingly, the Department cannot enforce these obligations because they were extinguished by prescription before they could become "abandoned property" under the Unclaimed Property statute.

Decree
For the reasons set forth above, the judgment of the court of appeal is affirmed.
AFFIRMED.
NOTES
[1] The obligations at issue in this case allegedly became abandoned prior to the comprehensive amendment and reenactment of the Unclaimed Property act by Act 829 of 1986. Accordingly, the version of the statute enacted by Act 146 of 1972, as amended by Act 204 of 1984, applies here. In the interests of convenience, unless otherwise noted all subsequent references to sections of the Revised Statutes are to those sections as applicable to this case.