# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #030

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **27th day of June, 2018**, are as follows:

**PER CURIAM**:

2017-C-1875      MARLON EAGLIN v. EUNICE POLICE DEPARTMENT, ET AL. (Parish of St. Landry)

In this case, we are called upon to decide whether the false arrest and false imprisonment claims of Paul Powell are prescribed. For the reasons that follow, we conclude the action is prescribed. Accordingly, we reverse the judgment of the court of appeal and reinstate the judgment of the district court.

JUDGMENT OF COURT OF APPEAL REVERSED. TRIAL COURT JUDGMENT REINSTATED.

JOHNSON, C.J., dissents and assigns reasons.
HUGHES, J., dissents and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2017-C-1875

MARLON EAGLIN

VERSUS

EUNICE POLICE DEPARTMENT, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF ST. LANDRY

**PER CURIAM**

In this case, we are called upon to decide whether the false arrest and false imprisonment claims of Paul Powell are prescribed. For the reasons that follow, we conclude the action is prescribed. Accordingly, we reverse the judgment of the court of appeal and reinstate the judgment of the district court.

**FACTS AND PROCEDURAL HISTORY**

The relevant facts of this case are largely undisputed. On May 4, 2015, the Eunice Police Department arrested Marlon Eaglin, Paul Powell, and two others and charged them with second degree murder. Mr. Eaglin and Mr. Powell remained imprisoned until their release on August 21, 2015.

On April 29, 2016, Mr. Eaglin filed the instant suit against the Eunice Police Department, the City of Eunice, and Chief Randy Fontenot (collectively referred to hereinafter as "defendants"), alleging false arrest and false imprisonment. On May 9, 2016, more than one year following the arrest, Mr. Eaglin amended his petition to add Mr. Powell as a party plaintiff.

In response to the amended petition, defendants filed an exception of

prescription, alleging Mr. Powell's claims for false arrest and false imprisonment were prescribed. Defendants argued Mr. Powell's claims prescribed on May 4, 2016, one year after the date of his May 4, 2015 arrest.

Mr. Powell opposed the exception. He argued the amended petition adding his claim related back to Mr. Eaglin's timely-filed petition. In addition, Mr. Powell argued his claim for false imprisonment did not commence until the date he was released from prison (August 21, 2015), thereby making his May 9, 2016 claim timely.

After a hearing, the district court granted defendants' exception of prescription and dismissed Mr. Powell's claims with prejudice. The district court initially rejected Mr. Powell's relation back argument, finding there was no legal or family relationship which would allow the amended petition adding Mr. Powell's claim to relate back to Mr. Eaglin's original claim. The court further reasoned that prescription on Mr. Powell's false imprisonment claim commenced to run on the date of his arrest, rather than his release from custody. Therefore, the court determined the claim was prescribed.

Mr. Powell appealed, and the court of appeal reversed. *Eaglin v. Eunice Police Department*, 17-127 (La. App. 3rd Cir. 10/4/17), 228 So.3d 280. The court of appeal found that Mr. Powell's cause of action for false imprisonment began to accrue on the date of his release from prison. Because of this determination, the court of appeal pretermitted discussion of Mr. Powell's relation back arguments.

Upon defendants' application, we granted certiorari to consider the correctness of this decision. *Eaglin v. Eunice Police Department*, 17-1875 (La. 3/9/18), ___ So.3d ___.

Two issues are presented for our consideration: (1) whether prescription for

2

false arrest and imprisonment commences on the date of the arrest or the date of release; and (2) if prescription runs from the date of arrest, whether an amended petition adding a new plaintiff relates back to an original petition filed within one year of the arrest. We will address these issues in turn.

*Prescription*

Defendants argue the suit is prescribed because it was clearly filed more than one year from Mr. Powell's arrest. However, Mr. Powell takes the position that prescription did not commence until he was released from custody, making his suit timely.

We last addressed this issue more than eighty years ago in *De Bouchel v. Koss Const. Co., Inc.*, 17 La. 841, 149 So. 496 (1933). In *De Bouchel*, the plaintiff was arrested, imprisoned, charged with disturbing the peace, and released on bond on the same day, June 5, 1931. The matter proceeded to a trial on July 7, 1931, at which time the plaintiff was acquitted. On July 5, 1932, the plaintiff filed suit against defendant, Koss Construction Company ("Koss"), alleging false imprisonment and malicious prosecution as part of a conspiracy to seize his mother's land. For the purposes of prescription, this court found the false imprisonment and malicious prosecution causes of action "arose on the same day, namely, June 5, 1931, which is the day on which plaintiff was both falsely imprisoned and then released from prison." ("As respects the demand for damages for false imprisonment, the damage and the cause of action therefor arose on the same day, namely, June 5, 1931, which is the day on which plaintiff was both falsely imprisoned and then released from prison."). *De Bouchel*, 17 La. at 847, 149 So. at 497

Because the plaintiff in *De Bouchel* was arrested, imprisoned, and released in

3

the course of one day, it provides little guidance in the instant case, where over three months elapsed between Mr. Powell's arrest and release. However, the issue has been discussed in detail in the circuits.

In *Buvens v. Buvens*, 286 So.2d 144 (La. App. 3rd Cir. 1973), the plaintiff was arrested on May 6, 1963. He was later transferred to a state mental hospital. He left the hospital on July 13, 1963 on a pass and did not return. On June 24, 1964, more than one year after this arrest, plaintiff filed a false imprisonment suit. The trial court found plaintiff's suit was prescribed. The court of appeal affirmed on appeal, explaining the events which caused plaintiff's damage were his arrest and the commitment to the hospital for treatment. Although the court acknowledged that plaintiff was committed during this time, it found he "was aware of these facts and was never prevented from bringing suit." *Id.* at 147.

In a subsequent case, *Murray v. Town of Mansura*, 06-0355 (La. App. 3 Cir. 9/27/06), 940 So.2d 832, *writ denied*, 06-2949 (La. 2/16/07), 949 So.2d 419, the court reached a different result. In *Murray*, the police chief of the Town of Mansura arrested the plaintiffs on March 21, 1999, and charged them with disturbing the peace and flight from an officer. The Town released the plaintiffs from imprisonment on March 22, 1999, and the ad hoc magistrate later dismissed the charges on September 27, 1999. On September 28, 2000, the plaintiffs filed suit against the Town. In a supplemental petition filed on July 11, 2002, the plaintiffs added false arrest and imprisonment claims. The Town filed an exception of prescription, which the trial court granted. The court of appeal affirmed. Citing our opinion in *De Bouchel*, the court of appeal reasoned that prescription commenced on March 22, 1999, the day the imprisonment terminated, and the case was therefore prescribed by the time the July 11, 2002 false arrest and imprisonment claims were filed. However, *Murray* does not

4

squarely resolve the issue presented here, because the July 11, 2002 suit was also filed more than one year from the plaintiffs' March 21, 1999 arrest.

The issue was also addressed in *Jackson v. Jefferson Parish Clerk of Court*, 07-0963 (La. App. 5 Cir. 5/12/08), 981 So.2d 156, *writ denied*, 08-1150 (La. 10/31/08), 993 So.2d 219. In that case, the plaintiff was arrested and charged with possession of stolen things, and later released on bond in May 2000. On December 5, 2000, the plaintiff appeared before the district court and asked for a continuance, which the trial court granted. On this date, the minute clerk erroneously filed a minute entry into plaintiff's record indicting he had pled guilty. On February 14, 2001, the plaintiff was notified that his parole was being revoked due to the new conviction, and he was incarcerated for parole violation until May 26, 2005, resulting in four years of incarceration. On May 16, 2006, the plaintiff filed suit against the Jefferson Parish Clerk of Court and others, alleging he was falsely imprisoned for four years as a result of the erroneous minute entry. Defendants filed an exception of prescription, which the trial court granted. The court of appeal affirmed. In an opinion authored by Judge (later Justice) Guidry, the court of appeal affirmed, finding the doctrine of contra non valentem did not interrupt the one-year prescriptive period for false imprisonment on the ground the plaintiff had knowledge that he was incarcerated in error several years prior to filing suit:

> In this case, the Plaintiff's parole was revoked in 2001. The letter informing him of the revocation stated it was because of his conviction, although he knew the case was still pending, and an error had been committed. He took no investigative action or contacted his attorney. In 2004, while imprisoned, he filed a motion to correct an illegal sentence, because of the error, but again, he failed to take further action when the motion was denied.
>
> **The trial judge found, and we agree, that the mere fact that the Plaintiff was in prison is not an excuse for failing to file suit timely**. *See, McCoy v. City of Monroe*,

32,521 (La.App. 2 Cir. 12/8/99), 747 So.2d 1234; *Lloyd v. Howard*, 566 So.2d 424, (La.App. 3 Cir.1990); and *Corsey v. State, Through Dept. of Corrections*, 375 So.2d 1319 (La.1979). In *McCoy,* a prisoner sought damages from the district attorney's office for obtaining a conviction against him under an unlawful indictment. The contra non valentem doctrine was found not applicable to toll prescription. Likewise, in *Lloyd*. There, the court declined to apply the doctrine although the injured prisoner claimed she was unable to file suit because of veiled threats by the Sheriff. In *Corsey v. State, Through Dept. of Corrections*, 375 So.2d 1319 (La.1979), the court found prescription tolled by the doctrine of contra non valentem. However, it did so because the prisoner was injured so badly by the defendant that he had been incapable of understanding what had happened to him and was not aware of his legal remedies. [emphasis added].

Although *Jackson* does not cite the earlier appellate opinion in *Buvens*, it espouses similar reasoning. Essentially, *Jackson* reasons the plaintiff knew he was injured on the day his parole was revoked, and prescription on the false arrest claim commenced on that day. Although the plaintiff may have been incarcerated while the prescriptive period was running, the *Jackson* court found the plaintiff did not make any showing that he was prevented from filing suit simply due to his incarceration.

The holdings of *Jackson* and *Buvens* are consistent with the well-settled concept that prescription commences to run from the day injury or damage is sustained. La. Civ. Code art. 3492; *Braud v. New England Ins. Co.*, 576 So.2d 466 (La. 1991). In the instant case, it is undisputed that Mr. Powell's injury or damages based on the alleged false arrest and false imprisonment was first sustained on May 4, 2015, the date he was arrested. Therefore, prescription commenced that day.

In arguing prescription commences from the date of release, rather than the date of arrest, Mr. Powell urges us to consider *Wallace v. Kato*, 549 U.S. 384 (2007). In *Wallace*, the United States Supreme Court, applying general common law principles to an Illinois case, held that statute of limitations in a false imprisonment

6

case being to run when the false imprisonment ends. The Court cited a treatise explaining that this rule is "dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned. . . ." 549 U.S. at ___ (citing 2 H. Wood, Limitation of Actions §187d(4), p. 878 (4th rev. ed. 1916)).

We have long recognized significant differences exist between common law statutes of limitations and the civil law concept of prescription. *See, e.g., Louisiana Health Service and Indem. Co. v. McNamara*, 561 So.2d 712, 718 (La. 1990) (explaining that "[u]nlike statutes of limitations at common law, which are merely procedural bars to the enforcement of obligations, civilian prescriptive periods act to extinguish the civil [i.e., legal] obligation to which they apply."). These fundamental distinctions between the two concepts suggest that common law doctrine is not persuasive authority for interpreting prescriptive periods under the civil law.

Moreover, we believe the concerns identified at common law for delaying the commencement of the statutes of limitations in false imprisonment cases are not applicable under Louisiana law. In particular, the common law treatise writers suggest the statute of limitations in false imprisonment cases should be delayed under the person's release because the person might not be able to file suit while incarcerated. However, in our civil law tradition, such concerns are addressed through the ancient civilian doctrine of *contra non valentem agere nulla currit praescriptio,* which provides that under certain specific conditions, prescription may be suspended when a plaintiff is unable to exercise his cause of action when it accrues. *See Corsey v. State Dept. of Corrections*, 375 So.2d 1319 (La.1979). This equitable doctrine serves to ameliorate the harshness which would result from the strict application of prescription in certain situations. *State Through Div. of Admin, v. McInnis Bros. Const.*, 97-0742, p. 3 (La. 10/21/97), 701 So.2d 937, 940.

Nonetheless, under the facts of the case at bar, we see no basis for application of the doctrine of *contra non valentem*. Mr. Powell has not asserted that he was prevented from filing suit due to his incarceration. Moreover, although Mr. Powell was incarcerated for approximately three months after his May 4, 2015 arrest, nearly eight months remained in the prescriptive period at the time he was released on August 21, 2015. Indeed, Mr. Eaglin, who was incarcerated for the same amount of time as Mr. Powell, was able to file his suit timely on April 29, 2016. Mr. Powell presents no explanation as to he waited until May 9, 2016, more than one year following the arrest, to present his claim. Thus, while the doctrine of *contra non valentem* might be applicable to false arrest and imprisonment claims under an appropriate set of facts, we find no basis to apply the doctrine here.

In summary, we conclude prescription on Mr. Powell's false arrest and false imprisonment claims commenced on May 4, 2015, the date of his arrest. His May 9, 2016 claim was filed outside of the one-year prescriptive period and is therefore untimely.

*Relation Back*

Mr. Powell next argues that even if his claim was filed outside of the one-year prescriptive period, it should still be considered timely because the amended petition adding this claim related back to Mr. Eaglin's original petition. It is undisputed that Mr. Eaglin's April 29, 2016 suit was filed within one year of the May 4, 2015 arrest. Therefore, if the amended petition adding Mr. Powell relates back to Mr. Eaglin's original petition, Mr. Powell's claims will be timely.

In *Giroir v. South Louisiana Medical Center, Div. of Hospitals*, 475 So.2d 1040, 1044 (La. 1985), we explained an amendment adding or substituting a plaintiff

should be allowed to relate back if (1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; (3) *the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated*; (4) the defendant will not be prejudiced in preparing and conducting his defense. [emphasis added].

Although all of these factors must be satisfied in order for a claim to relate back, our inquiry in this case focuses on the third factor – namely, whether the new and old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated. In discussing this factor, we explained the original plaintiff and the new plaintiffs must have "close, familial and legal relationships." *Giroir*, 475 So.2d at 1045.

In the case before us, Mr. Powell has not alleged that he has any close familial or legal relationship with Mr. Eaglin.[1] Mr. Powell's claim for damages stemming from his false arrest and false imprisonment are not derivative of Mr. Eaglin's claims nor are they related in any legal sense. Rather, both men possess wholly separate and distinct causes of action based on their own injuries resulting from their allegedly improper arrest and imprisonment. Because the claims are unrelated from a legal standpoint, there is no basis under which the amended petition adding Mr. Powell as a plaintiff can relate back to Mr. Eaglin's original petition.

## DECREE

---

[1] During the hearing on the exception of prescription, Mr. Powell's counsel indicated that Mr. Eaglin and Mr. Powell were cousins; however, no testimony or other evidence to this effect was introduced. In any event, the jurisprudence has declined to broadly construe the term "close familial relationships" as used in *Giroir*. See *Boquet v. SWDI, LLC*, 07-0738 (La. App. 1ˢᵗ Cir. 6/6/08), 992 So.2d 1059 (finding the claim of a step-mother did not relate back); *Delmore v. Hebert*, 99-2061 (La.App. 1 Cir. 9/22/00), 768 So.2d 251 (finding the claim of a niece did not relate back).

For the reasons assigned, the judgment of the court of appeal is reversed.  The judgment of the district court granting defendants' exception of prescription and dismissing the claims of Paul Powell with prejudice is reinstated.

SUPREME COURT OF LOUISIANA

No. 2017-C-1875

MARLON EAGLIN

VERSUS

EUNICE POLICE DEPARTMENT, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF ST. LANDRY

**JOHNSON, Chief Justice, dissents and assigns reasons.**

I respectfully dissent because I do not find Mr. Powell's false arrest and false imprisonment claims are prescribed. Rather, I find the court of appeal correctly determined that prescription on such claims does not commence until the imprisonment ends. Because Mr. Powell was not released until August 21, 2015, I find his claims were timely filed on May 9, 2016.

Contrary to the majority, I find the holding and reasoning of *Wallace v. Kato*, 549 U.S. 384 (2007) applicable here. As explained by the Supreme Court in *Wallace*,

> The running of the statute of limitations on false imprisonment is subject to a distinctive rule—dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned: Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends.

549 U.S. 384, 389 (citing 2 H. Wood, Limitation of Actions § 187d(4), p. 878 (rev. 4th ed.1916); 4 Restatement (Second) of Torts § 899, Comment c (1977); A. Underhill, *Principles of Law of Torts* 202 (1881)). While acknowledging concerns about a person's ability to file suit while incarcerated, rather than follow the logical rule of the Supreme Court in these cases, the majority instead holds that the doctrine of *contra non valentem* should apply. In so doing, the majority puts the burden on

the incarcerated person to show why he was unable to file suit timely and effectively shortens the prescriptive period for this category of litigants. In my view, the prescriptive period should be absolute, and we should not particularize prescription limitations for those incarcerated.

For these reasons, I would affirm.

**SUPREME COURT OF LOUISIANA**

**No. 2017-C-1875**

**MARLON EAGLIN**

**VERSUS**

**EUNICE POLICE DEPARTMENT, ET AL**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, THIRD CIRCUIT, PRISH OF ST. LANDRY**

**Hughes, J., dissenting.**

Respectfully, in my opinion every day that a person is falsely imprisoned is a harm to that person. I distinguish false arrest and malicious prosecution. I realize that in today's world Dumas and Voltaire are not as fashionable as once they were, and the freedom of some may be considered worth more than that of others, but every day taken is worth something until the false imprisonment is ended.